IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| FENG (FRANKLIN) TAO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:25-cv-02005-JWB-BGS |
| | ) |
| UNIVERSITY OF KANSAS, | ) |
| | ) |
| Defendant. | ) |

### DEFENDANT UNIVERSITY OF KANSAS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

Defendant the University of Kansas (the "University" or "KU") submits the following arguments and authorities in Opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF Nos. 21 and 22).

### BACKGROUND AND SUMMARY OF THE ARGUMENT

Plaintiff Feng "Franklin" Tao ("Tao" or "Plaintiff") was indicted by a grand jury for various federal crimes. While he was a faculty member employed by KU, he accepted an appointment to a faculty position at a Chinese university pursuant to a program administered by the Chinese government, spent considerable time and resources preparing his laboratory and future research program at the Chinese institution, and failed to tell KU, or the U.S. federal agencies sponsoring his research at KU, anything about it, despite an obligation to do so. Following an investigation into his conduct led by the FBI and DOJ, Tao was convicted of making a false statement in violation of 18 U.S.C. § 1001 based on a federal jury's finding that Tao falsely represented to KU that he had no conflicts of interest when, in truth, Tao knew he had conflicts because of his relationship and activities at the Chinese institution. Tao's conviction was later overturned on appeal solely because the prosecution did not introduce sufficient evidence that Tao's lie to KU

1

and others materially influenced the government agencies that awarded the grants Tao worked on at KU. But no court has questioned the jury's finding that Tao lied to KU in the first place. *See generally United States v. Tao*, 629 F.Supp.3d 1083 (D. Kan. 2022); *United States v. Tao*, 107 F.4th 1179 (10th Cir. 2024). And for purposes of <u>this</u> case, that is what matters.

Rather than be satisfied with narrowly escaping a felony conviction only because federal agencies did not materially rely on his fraud (even though KU did), on January 3, 2025, Tao filed his misguided Complaint (ECF No. 1) seeking to hold KU liable for terminating his employment and for cooperating with the federal investigation into his potentially criminal conduct. Specifically, Tao brought claims against KU for violation of Title VII, claiming KU's cooperation with law enforcement was somehow motivated by anti-Chinese bias. He also asserted various constitutional claims against KU under 42 U.S.C. § 1983, a discrimination in contracting claim under 42 U.S.C. § 1981, and a direct constitutional claim under the Fourteenth Amendment. Finally, he asserted a Kansas common law claim against KU for breach of contract arising from the termination of his employment.

Before KU had even responded, Plaintiff exercised his one opportunity to file an Amended Complaint "as a matter of course" (*see* Fed. R. Civ. P. 15(a)(1)) to include a new demand that he be awarded the value of attorneys' fees he spent defending his federal criminal prosecution as damages for KU's supposed tortious conduct (*see* ECF No. 10).

And yet, there remained a glaring problem with Plaintiff's claims against KU under 42 U.S.C. § 1983 and § 1981, the Fourteenth Amendment, and for breach of contract—all of them were unequivocally barred by preexisting Supreme Court, Tenth Circuit, and District of Kansas precedent. Indeed, it has been well-established for many years that, as a subdivision of the State of Kansas, KU is not "person" who can be sued under § 1983; state entities cannot be sued at all

2

under § 1981; there is no freestanding Fourteenth Amendment claim against state entities; and, under Kansas law, Plaintiff's sole remedy for breach of contract relating to his employment was to bring a cause of action under the Kansas Judicial Review Act within 30 days of the termination of his employment, which Plaintiff did not do.  *See, e.g.*, *Tufaro v. Oklahoma ex rel. Bd. of Regents of Univ. of Okla.*, 107 F.4th 1121, 1135 (10th Cir. 2024) (noting that Tenth Circuit cases have "consistently found state universities are arms of the state" not subject to suit under § 1983); *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1137 (10th Cir. 2006) ("damages claims against state actors for § 1981 violations must be brought under § 1983"); *Moral v. Babcock*, 2010 WL 3199634, at *5 n. 15 (D. Kan. Aug. 12, 2010) ("The Fourteenth Amendment does not allow a private cause of action but instead claims must be brought pursuant to 42 U.S.C. § 1983."); *Barrow v. Kansas State Univ.*, 2022 WL 2072693, at *3 (D. Kan. June 9, 2022) (Kansas State University is an arm of the state that enjoys Eleventh Amendment immunity), *aff'd*, 2023 WL 10101935 (10th Cir. Oct. 25, 2023); *Dehn v. Board of Regents*, 2025 WL 266647, at *10 (D. Kan. Jan. 22, 2025) (citing numerous Kansas appellate decisions holding the KJRA is exclusive mechanism for asserting a breach of contract claim against KU).

Nonetheless, KU was forced to file a Motion to Dismiss (ECF No. 14) citing the well-established caselaw barring Plaintiff's claims.  Instead of readily admitting most of his claims against KU were absolutely and inarguably barred, Plaintiff requested time to consider whether he would oppose or attempt to amend.  After mulling over the matter for over three weeks, Plaintiff now seeks leave to file a Second Amended Complaint.  Not surprisingly, Plaintiff's Second Amended Complaint abandons every claim against KU except the Title VII claims.  But Plaintiff now seeks to join KU's Chancellor and Executive Vice Chancellor as **new individual defendants** so he can assert against them in their official and personal capacities the § 1983 and § 1981 claims

3

he attempted to assert against KU but that have now been exposed as clearly barred. While KU does not object to Plaintiff abandoning claims against it that are barred by law,[1] KU does object to Plaintiff joining KU administrators as new defendants.

The caselaw establishing that Plaintiff's § 1983 and § 1981 claims against KU were meritless is clear, voluminous, and not easily missed. This suggests two possibilities: (1) Plaintiff failed to do any precatory research to determine whether his claims against KU were appropriate under governing law; or (2) Plaintiff knew his claims were meritless but made a tactical decision to see if he could "get away with it," knowing he would pursue "Plan B" and sue KU administrators[2] only if KU moved to dismiss.

While the standard for leave to amend under Rule 15 is generous, courts may deny leave to amend when there is "undue delay," and delay can be "undue" when the Plaintiff has no explanation for why the amended claims were not brought earlier. *See Horocofsky v. City of Lawrence*, 2022 WL 2802316, at *4 (D. Kan. July 18, 2022) (citing Tenth Circuit caselaw holding leave to amend can be denied based on untimeliness where a plaintiff "offered no explanation for the delay"); *see also Martinez v. Target Corp.*, 384 F. App'x 840, 846-47 (10th Cir. 2010)

---

[1] Plaintiff also makes some amendments to his Title VII claims against KU. While the amendments are insufficient to save those claims, the Court made known its preference that futility arguments should be raised in a motion to dismiss, and not in an opposition to a motion for leave to amend. Therefore, KU does not object to the amendments to the Title VII claim, although it will move to dismiss those claims for failure to state a claim. If the Court grants Plaintiff's request for leave to amend to join the new defendants, despite the arguments set forth in this brief, the Chancellor and Executive Vice Chancellor will presumably also move to dismiss the claims newly asserted against them.

[2] Plaintiff has known of the involvement of the Chancellor and Executive Vice Chancellor in the underlying factual transaction all along, so it is not as though Plaintiff recently discovered their existence as new potential defendants. But, there are reasons why a plaintiff might prefer not to have to sue an individual administrator—most prominently the potent defense of qualified immunity, which comes with the right of interlocutory appeal, at the motion to dismiss and motion for summary judgment stages.

(affirming denial of leave to amend under the generous Rule 15 standard because plaintiff offered "no adequate explanation for the delay").

Plaintiff argues that this case has only been pending for six months. True enough. But Plaintiff never explains why he did not name the Chancellor and Executive Vice Chancellor at the outset of this case, or even when he filed his First Amended Complaint. Plaintiff was aware of the Chancellor and Executive Vice Chancellor's involvement in all the underlying facts. The only new information Plaintiff identifies in his motion is that KU moved to dismiss his claims against it. Specifically, Plaintiff characterizes his attempt to join the Chancellor and Executive Vice Chancellor as a "substitution" of parties in response to KU's arguments. *See* ECF No. 22, at 4 ("KU's position here is perplexing. The substitution is in direct response to KU's arguments in its motion to dismiss. . . .").

But, in reality, Plaintiff is not seeking to "substitute" parties—at least, not as that term is normally used where a defendant dies or becomes incompetent, or a public official leaves his post. *See* Fed. R. Civ. P. 25. Here, Plaintiff pleaded substantive claims against KU that were unequivocally barred under controlling law. Plaintiff either knew that, or should have known that, and can hardly now claim surprise that KU asserted the very defenses that the Supreme Court, Tenth Circuit, and District of Kansas precedents have held are meritorious for years. The very cases that hold KU cannot be sued under § 1983, § 1981, and the Equal Protection clause also make clear that claims can be brought against individuals, albeit subject to the potential defense of qualified immunity, among others. It appears Plaintiff was clearly aware—at the outset of this case—that he could attempt to bring claims against the Chancellor and Executive Vice Chancellor. He simply did not do so, presumably for tactical reasons. And that is not a good enough excuse.

5

**CONCLUSION**

In sum, Plaintiff wants this Court to hold that a plaintiff can assert clearly barred claims against a state entity, wait and see if the state defendant points out that the claims are barred through a motion to dismiss, and only if the state points out the obvious, is it then time for the plaintiff to consider whether he wants to sue individual state employees instead. KU respectfully suggests this tactic is improper and relegates litigation to a game of "whack-a-mole."[3]

Because Plaintiff has not given any **persuasive** reason for why he did not name the Chancellor and Executive Vice Chancellor as defendants earlier, the Court should deny leave to amend as to claims against the individual defendants.

Date:   June 13, 2025                                        Respectfully submitted,


*/s/ Brian J. Zickefoose*
| | |
|---|---|
| DEREK T. TEETER | KS BAR NO. 23242 |
| BRIAN J. ZICKEFOOSE | KS BAR NO. 21948 |
| ALLEN F. JAMES | D. KAN. NO. 78843 |
| NOEL Z. FISHER | KS BAR NO. 29422 |

HUSCH BLACKWELL LLP
4801 Main, Suite 1000
Kansas City, Missouri 64112
(816) 983-8000
(816) 983-8080 (FAX)
derek.teeter@huschblackwell.com
brian.zickefoose@huschblackwell.com
aj.james@huschblackwell.com
noel.fisher@huschblackwell.com

***Attorneys for Defendant University of Kansas***

---

[3] Plaintiff's tactic here also smacks of retaliation. Because KU pointed out that Plaintiff's claims against it are clearly barred, Plaintiff only then attacks KU's administrators and feigns being "perplexed" when KU does not consent to having its employees sued. The bottom line is that, if Plaintiff wanted to sue Chancellor Girod and Executive Vice Chancellor Bichelmeyer, he could and should have done so at the outset of this case or in his First Amended Complaint.

## CERTIFICATE OF SERVICE

      I hereby certify that on this 13th day of June 2025, a true and accurate copy of the above and foregoing was filed electronically via the court's CM/ECF electronic filing system with a copy sent via electronic mail to the following counsel of record:

Matthew Donnelly
PETEFISH IMMEL HIRD JOHNSON & LEIBOLD, LLP
842 Louisiana Street
Lawrence, KS 66044
mdonnelly@petefishlaw.com

Karen R. King
Catherine M. Foti
Elena R. Syman
MORVILLO ABRAMOWITZ GRAND IASON & ANELLO PC
565 Fifth Avenue
New York, NY 10017
kking@maglaw.com
cfoti@maglaw.com
esyman@maglaw.com

**ATTORNEYS FOR PLAINTIFF**

                                              */s/ Brian J. Zickefoose*
                                              **AN ATTORNEY FOR DEFENDANT**