IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FENG TAO, also known as,
FRANKLIN TAO

        Plaintiff,

v.                                        Case No.  25-2005-JWB

UNIVERSITY OF KANSAS, *et al.*,

        Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants' motions to dismiss.  (Docs. 31, 33.)  The motions are fully briefed and ripe for decision.  (Docs. 32, 34, 42, 43, 44.)  The motions are GRANTED IN PART and DENIED IN PART for the reasons stated herein.  Additionally, because the underlying basis for relief is dismissed as part of this order, Plaintiff's motion for a preliminary injunction is DENIED.  (Doc. 46.)

**I.    Facts**

The following facts are taken from Plaintiff's second amended complaint.  (Doc. 27.)  The court assumes their truth for the purpose of this order.  Plaintiff Feng Tao (hereinafter "Plaintiff" or "Mr. Tao") is a renowned chemical engineering professor.  (*Id.* at 1.)  Mr. Tao was born in China.  (*Id.*)  He came to the United States in 2002 to pursue a PhD at Princeton.  (*Id.*)  He completed his PhD in Chemistry, finished postdoctoral research, and joined the University of Notre Dame as a professor.  (*Id.*)  In 2014, he joined the University of Kansas ("KU") as a tenured professor.  (*Id.* at 2.)  Plaintiff was successful during his time at KU and won multiple awards.  (*Id.* at 7-8.)  Mr. Tao operated out of a laboratory at KU and performed several research projects with

the support of the United States Department of Energy and the National Science Foundation.  (*Id.* at 7.)  Mr. Tao has been awarded over $4 million in grants for his work over a seven-year period. (*Id.*)

Defendant KU was Plaintiff's employer.  (*Id.* at 2.)  Defendant Douglas Girod (hereinafter "Mr. Girod" or "Defendant Girod") is the Chancellor of KU, he is sued in his individual and official capacities.  (*Id.* at 3-4.)  Defendant Barbara Bichelmeyer (hereinafter "Ms. Bichelmeyer" or "Defendant Bichelmeyer") is the Provost and Executive Vice Chancellor of KU, she is sued in her individual and official capacities.  (*Id.* at 4.)

This case arises out of a failed prosecution by the United States Department of Justice ("DOJ") through its "China Initiative."  (*Id.* at 5.)  The "China Initiative", launched in 2018, was a program designed to combat economic and industrial espionage by Chinese scientists working in the United States.  (*Id.*)  The DOJ ended the program in 2022.  (*Id.*)  In April 2019, an anonymous individual sent an online tip to KU accusing Mr. Tao of economic espionage based on an academic position in China Mr. Tao allegedly held simultaneously.  (*Id.* at 8.)  KU, at the direction of Defendant Girod, passed this tip along to the Federal Bureau of Investigation ("FBI").  (*Id.* at 9.)

Mr. Tao claimed that the tip was false and fabricated by a disgruntled KU visiting scholar who did not receive credit on a paper.  (*Id.*)  The disgruntled scholar allegedly tried to extort Mr. Tao for $300,000 before making her tip.  (*Id.*)  KU never notified Mr. Tao it had received a tip. (*Id.*)  Instead, Defendant Girod directed KU to assist the FBI in its investigation of Plaintiff.  KU and the federal government found no evidence of espionage and instead the government built a case upon wire fraud, program fraud, and false statements.  (*Id.* at 10.)  Mr. Tao alleges that KU made unplanned federal grant payments in the summer of 2019 so that Mr. Tao's salary would exceed the minimum level required for charges of program fraud.  (*Id.*)

2

KU also reviewed forms Mr. Tao submitted for possible misstatements to support false statement charges. (*Id.*) KU claimed that Mr. Tao signed a conflict-of-interest form that did not disclose a relationship with a Chinese university. (*Id.*) Mr. Tao never created such a form but asserts instead that the form was cloned automatically by KU's "e-compliance system." (*Id.*) Additionally, Mr. Tao says he never entered a relationship with the Chinese university but rather had explored working with it, though nothing materialized. (*Id.* at 10-12.)

After months of evidence gathering, the FBI raided Mr. Tao's home and office in August 2019. (*Id.* at 12.) He was arrested the following day. (*Id.*) After his arrest, KU placed him on administrative leave and banned him from KU's campus. (*Id.*) In June 2020, the government filed a second superseding indictment that charged Mr. Tao with seven counts of wire fraud and three counts of false statements. (*Id.* at 14.)

Before Mr. Tao's criminal trial began, KU's interim Provost and Executive Vice Chancellor recommended dismissal of Mr. Tao. (*Id.* at 15.) Defendant Girod agreed. (*Id.*) Mr. Tao was dismissed on March 9, 2020. (*Id.*) Four days later, he appealed under KU's internal procedures to the Faculty Rights Board ("FRB"). (*Id.*) In July 2020, KU and Mr. Tao agreed to suspend the appeal until Mr. Tao's criminal proceeding concluded. (*Id.*) The parties agreed that if the result was a conviction, Mr. Tao would be dismissed and waive his right to appeal, except for purposes of restitution. (*Id.* at 16.) The parties also agreed that if the criminal proceeding resulted in acquittal or dismissal, KU's pursuit of termination would resume. (*Id.*)

On April 7, 2022, Mr. Tao was found guilty on three counts of wire fraud and one count of making a false statement. (*Id.* at 16.) Mr. Tao was found not guilty on the remaining counts. (*Id.*) In the aftermath of the verdict, Mr. Tao moved for acquittal as a matter of law. (*Id.*) Eight days later, while that motion was pending, KU informed Mr. Tao it was proceeding with his termination.

(*Id.* at 17.)  In September 2022, United States District Judge Julie A. Robinson acquitted Mr. Tao of the three counts of wire fraud.  (*Id.*)  The single false statement charge that remained resulted in a sentence of time served and two years of supervised release.  *United States v. Tao*, No. 19-CR-20052-JAR-1, ECF No. 335.  Mr. Tao appealed his conviction to the Tenth Circuit.  In July 2024, the circuit reversed Mr. Tao's conviction, finding that the government failed to prove the alleged false statement was material.  (Doc. 27 at 18.)  During the ordeal, Mr. Tao spent a week in jail and was confined to his home with an ankle monitor for 3.5 years.  (*Id.* at 19.)

After his acquittal, Mr. Tao requested reinstatement from KU.  (*Id.*)  Defendants Bichelmeyer and Girod denied his request but granted him unpaid administrative leave so that he could appeal to the FRB.  (*Id.*)  The parties engaged in settlement negotiations between December 2024 and February 2025.  (*Id.*)  These attempts were futile, and Mr. Tao elected to proceed with his FRB appeal.  (*Id.* at 20.)  Because the FRB did not have a chairman, Mr. Tao's appeal could not proceed normally.  (*Id.*)  KU attempted to constitute a temporary FRB, but that FRB lacked a chair that was a tenured professor.  (*Id.*)  Mr. Tao refused to consent to this temporary FRB as he believes that the composition of the FRB is a term of his employment contract and cannot be unilaterally modified by the University.  (*Id.* at 20-21.)

Mr. Tao initiated the instant lawsuit in January 2025.  (Doc. 1.)  Mr. Tao alleges that the stated justification for his termination (a failure to disclose ties to a foreign university), was pretextual because other faculty members who are not of Chinese descent and national origin "were not targeted, disparaged, reported to law enforcement, or subjected to adverse employment action." (Doc. 27 at 21-23.)  Mr. Tao raises six claims against Defendants.  (*Id.* at 24-30.)  The first two counts are violations of Title VII of the Civil Rights Act of 1964 and are levied against KU for alleged discrimination and wrongful termination on the basis of race.  (*Id.* at 24-25.)  Counts three

and four are claims under 42 U.S.C. § 1983 against Defendants Girod and Bichelmeyer in their official and individual capacities for denial of procedural due process under the Fourteenth Amendment to the United State Constitution. (*Id.* at 26-28.) The final two counts are § 1981 and §1983 claims raised only against Defendant Girod in his official capacity for racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. (*Id.* at 28-30.)

Mr. Tao requests that this court: (1) order reinstatement of Mr. Tao to his tenured position; (2) award compensatory damages for lost wages, reputational injury, emotional distress, pain and suffering; (3) award punitive damages; (4) award attorneys' fees and costs expended to defend the criminal case; and (5) award attorneys' fees for the instant case. (*Id.* at 30.) Defendants have filed motions to dismiss to which Plaintiff has responded. The court considers the parties' arguments below.

## II.    Standard

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla*., 510 F.3d 1196, 1200 (10th Cir. 2007).

## III.    Analysis

Defendants' motions to dismiss are organized around each count of the complaint. The court will take the same approach. Defendants challenge the claims in Plaintiff's complaint on numerous grounds. First, KU argues that Plaintiff has not administratively exhausted his claims

of disparate treatment and hostile work environment. (*Id.* at 6-12.) Second, KU argues that Plaintiff has failed to adequately plead a discriminatory termination claim. (*Id.* at 12-15.) Third, Defendants Girod and Bichelmeyer argue that Mr. Tao's procedural due process claims fail as a matter of law. (Doc. 34 at 6-10.) Fourth, Defendants Girod and Bichelmeyer argue that the due process claims against them as individuals fail because they are barred by the statute of limitations and the administrators have qualified immunity. (*Id.* at 10-13.) Finally, Defendant Girod argues that Mr. Tao has failed to adequately plead claims under the Equal Protection Clause. (*Id.* at 13-15.) The court addresses each argument in turn.

## A. Count I: Discrimination Under Title VII of the Civil Rights Act of 1964

Plaintiff's count I alleges general discrimination on the basis of race under Title VII of the Civil Rights Act of 1964. (Doc. 27 at 24.) Specifically, Defendant argues Mr. Tao's claims under count I include those of hostile work environment and disparate treatment. (Doc. 32 at 6-10.) Defendant KU contends that Mr. Tao has not exhausted either of these claims. (*Id.*) Plaintiff though, concedes in its response that count I encompasses only "continuing discrimination and hostile work environment and Count II alleges disparate treatment." (Doc. 42 at 16.) Therefore, in this section, the court only addresses the hostile work environment claim.[1] To properly levy a claim of employment discrimination a plaintiff "must plausibly allege these elements: (1) [he] is a member of a protected class,[2] (2) [he] suffered an adverse employment action, and (3) the challenged action occurred under circumstances giving rise to discrimination." *McNellis v.*

---

[1] To the extent count I contains claims premised on an adverse action of wrongful termination, that analysis is merged into the court's analysis under count II, as explained below.

[2] Title VII prohibits discrimination on the basis of race. In *Oncale*, the Supreme Court made clear that Title VII protects everyone. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) ("Title VII's prohibition of discrimination 'because of ... sex' protects men as well as women.") However, courts, including the Tenth Circuit, continue to include membership in a protected class as an element of a Title VII discrimination claim. Therefore, the court includes it here, even though the obvious import of *Oncale* is that everyone is in a protected class.

*Douglas Cnty. School Dist.*, 116 F.4th 1122, 1139 (10th Cir. 2024) (quoting *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015) (internal quotation marks omitted).

Before Plaintiff can bring such a claim, however, he must exhaust his claim with the Equal Employment Opportunity Commission ("EEOC"). *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir. 1997). The lawsuit may contain "allegations of discrimination reasonably related to the allegations listed in the administrative charge, including new acts occurring during the pendency of the administrative charge." *Id.* (citing *Brown v. Hartshorne Pub. School Dist. #1*, 864 F.2d 680, 682 (10th Cir. 1988)). "A claim is considered 'reasonably related' when 'the conduct complained of would fall within the scope of the [administrative] investigation which can reasonably be expected to grow out of the charge that was made.'" *Edwards v. Creoks Mental Health Serv., Inc.*, 505 F. Supp. 2d 1080, 1092 (N.D. Okla. 2007) (quoting *Deravin v. Kerik*, 335 F.3d 195, 200-01 (2d Cir. 2003)) (modifications in original).

The first argument Defendant KU raises is that Plaintiff has failed to exhaust his administrative remedies for parts of his discrimination claim under Title VII. (Doc. 32 at 6-10.) KU claims that Mr. Tao's Charge of Discrimination filed with the EEOC did not include any mention of an alleged adverse employment action other than his termination. (*Id.* at 7.) This, KU says, precludes Plaintiff's ability to maintain allegations that "KU has engaged in ongoing discrimination against Professor Tao based on his race, ethnicity, and/or national origin. Among other things, KU targeted him, branded him a spy and a liar without evidence, harassed him, disparaged him, stripped him of his rights without due process, collaborated with the federal government against him as part of the 'China Initiative,' unlawfully surveilled him, [and] manufactured evidence." (*Id.* at 8) (quoting Doc. 27 at 24.)

According to KU, the only discrimination claim that may survive under count I is a claim for discriminatory termination. (*Id.*) Because of his failure to exhaust, Mr. Tao, according to KU, cannot maintain claims of continuing discrimination. (*Id.*) Moreover, Defendant claims that any claims arising prior to 300 days before Mr. Tao's Charge of Discrimination, dated June 16, 2023, must be dismissed as unexhausted. (*Id.* at 9.) Even if the court considers Mr. Tao to have fully exhausted his claims under count I, KU says they fail anyway (except for his termination claim), because Mr. Tao did not suffer an adverse employment action. (*Id.*)

Mr. Tao responds to KU's exhaustion argument by saying that KU reads the Charge of Discrimination too narrowly. (Doc. 42. At 15.) Mr. Tao also contests KU's argument about conduct arising prior to 300 days before Plaintiff's Charge of Discrimination. (*Id.* at 16-17.) Finally, Mr. Tao claims that KU is improperly attempting to impose a Rule 8 pleading standard on the Charge of Discrimination. (*Id.* at 9.) Mr. Tao clarifies for the court that count I of the complaint only covers "continuing discrimination" and "hostile work environment" claims while count II alleges the disparate treatment and wrongful termination claims. (*Id.* at 8.)

This court agrees with Defendant. Plaintiff's Charge of Discrimination is exceptionally short, reading in its entirety:[3]

> I began working for KU as a Professor in or about August 2014.
>
> On September 17, 2019, the University provided me with notice that it intended to begin the dismissal process for my tenured position. It stayed the dismissal process pending final resolution of other matters.
>
> On January 6, 2023, though the other matters were not resolved, KU provided me with notice that my employment was officially terminated.

---

[3] The court can consider Plaintiff's Charge of Discrimination at the motion to dismiss stage. *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) ("We have recognized however, that a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute.").

I believe I was terminated from my employment based on my race (Asian), color, and national origin (Chinese).

This Charge does not state all facts relevant to my claims but is a summary of those facts. (Doc. 32-2 at 1.) Plaintiff also checked the "continuing action" box and identified the earliest date of discrimination as August 20, 2019, running through "current." (*Id.*) Even under the "liberal" construction afforded to EEOC charges, Plaintiff's charge fails to raise any facts even referencing a hostile work environment. *Smith v. Cheyenne Retirement Investors L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018). A charge must "contain facts concerning the discriminatory and retaliatory actions underlying each claim." *Id.* (quoting *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007)) (internal quotation marks omitted). Looking at Plaintiff's charge, there is literally not a single fact, not even a threadbare recital, referencing a hostile work environment. *See* (Doc. 32-2 at 1.) The court cannot, and will not, infer from Mr. Tao's mere checking of the "continuing action" box that he alleged a hostile work environment. *Mackley v. TW Telecom Holdings, Inc.*, 296 F.R.D. 655, 669 (D. Kan. 2014) ("A party may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances. Further, an EEOC charge must allege facts in support of the claimant's discrimination claim beyond merely checking a box on the EEOC form.") (internal quotation marks omitted). Similarly, indeterminate references to "other matters" do not, as Plaintiff argues, suffice. (Doc. 42 at 16.)

The standard is whether the allegations in the charge are "reasonably related" to the allegations in the complaint, which occurs "when the conduct complained of would fall within the scope of the [administrative] investigation which can reasonably be expected to grow out of the charge that was made." *Creeks Mental Health Serv.*, 505 F. Supp. 2d at 1092 (quoting *Deravin*, 335 F.3d at 200-01) (internal quotation marks omitted). That does not occur here. There is nothing

about Mr. Tao's charge of discriminatory termination that leads to a reasonable inference about a hostile work environment.

Plaintiff avers that as a preventative measure against this conclusion, he has filed a supplemental EEOC charge, dated May 2, 2025. (Doc. 42 at 18.) The court does not have a copy of this charge. Even if it did, Plaintiff's claim that KU's exhaustion arguments would be moot is unavailing. The requirement to exhaust is not merely to create a procedural hurdle for litigants to clear before bringing suit in federal court. *See Martinez v. City and Cnty. of Denver*, No. 17-CV-03140, 2019 WL 1505873 at *5-6 (D. Colo. Apr. 5, 2019). The requirement to present a claim to the EEOC first is both to put the employer on notice *and* possibly facilitate a non-judicial resolution of a potential plaintiff's claim. *Id.* When a plaintiff, as Mr. Tao did here, comes into federal court and makes allegations outside his charge, and then during litigation, files a supplemental charge to support his complaint, it flouts the purposes of the exhaustion requirement. Indeed, the court finds it highly likely that Plaintiff only filed a supplemental charge because of Defendant KU's exhaustion argument made in its first motion to dismiss. *See* (Doc. 15 at 11-13.) Additionally, this new charge was apparently filed on May 2, 2025, which means any claims arising more than 300 days prior to the charge must fail. (Doc. 42 at 18); *see National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) ("A charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."). 300 days before May 2, 2025, is July 6, 2024. Given that Plaintiff has not actually been employed by KU, other than on administrative leave status to appeal his termination, since early 2023 (and has not actually worked there since 2019), it is unclear how this charge could contain "an act contributing to [a]

hostile work environment." *Id.*; (Doc. 27 at ¶¶ 72, 98).  Therefore, the court will not consider the second charge in this lawsuit.

Accordingly, the court grants Defendant KU's motion to dismiss on count I's hostile work environment claim.  Because Plaintiff concedes that count I does not contain a disparate treatment claim, the court dismisses the entirety of count I, except to the extent it contains a wrongful termination claim, which is merged into count II and addressed below.  *See* (Doc. 32 at 12.)

### B.  Count II: Wrongful Termination Under Title VII of the Civil Rights Act of 1964

Plaintiff's count II alleges that KU wrongfully terminated him on the basis of race in violation of Title VII.  (Doc. 27 at 25.)  Defendant KU moves to dismiss, alleging that Plaintiff has failed to properly plead the elements of a termination claim under Title VII.  (Doc. 32 at 12-15.)

A Title VII claim can be proven "by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).  As noted in the preceding section, a plaintiff "must plausibly allege . . . (1) [he] is a member of a protected class,[4] (2) [he] suffered an adverse employment action, and (3) the challenged action occurred under circumstances giving rise to discrimination."  *McNellis v. Douglas Cnty. School Dist.*, 116 F.4th 1122, 1139 (10th Cir. 2024) (quoting *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015) (internal quotation marks omitted).  Courts "rely on this 'general' recitation of the elements in evaluating where dismissal [is] required."  *Id.*  "For purposes of a disparate treatment claim an adverse action is one that 'constitutes a significant change in employment status, such as hiring,

---

[4] As noted in the preceding section, in *Oncale*, the Supreme Court made clear that Title VII protects everyone.  *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) ("Title VII's prohibition of discrimination 'because of ... sex' protects men as well as women.")  However courts, including the Tenth Circuit, continue to include membership in a protected class as an element of a Title VII claim of discrimination.  Therefore, the court includes it here, even though the obvious import of *Oncale* is that everyone is in a protected class.

firing, … reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *White v. Schafer*, 738 F. Supp. 2d 1121, 1134 (D. Colo. 2010) (quoting *Robinson v. Cavalry Portfolio Serv., L.L.C.*, 365 F. App'x 104, 114 (10th Cir. 2010)) (internal quotation marks omitted). Employment actions that are "minor or trivial" are not considered adverse actions. *Id.*

The Tenth Circuit has "articulated the elements of a prima facie Title VII discrimination claim differently from case to case." *McNellis*, 116 F.4th at 1139. "The precise requirements of a prima facie [discrimination] case can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic." *Id.* (internal quotation marks and citation omitted) (modification in original). That said, Defendant KU argues that the test contains more than the above elements. (Doc. 32 at 13.) Instead, KU contends that the test includes an element requiring Plaintiff to show that he was "treated less favorably than others not in the protected class." (*Id.*) While KU cites to relevant case law, the court rejects its suggested formula. First, as noted above, the Supreme Court has forbidden the use of the protected class formulation of Title VII, which makes it impossible to delineate those outside the protected class and examine if they are treated differently. *Oncale*, 523 U.S. at 78. Second, the court notes that the Tenth Circuit instructs district courts to reject rigidity and embrace the particulars of each case. *See McNellis*, 116 F.4th at 1139. Therefore, Plaintiff's treatment vis-à-vis other employees at the University of Kansas may be relevant insofar as it demonstrates circumstances evidencing discrimination, but the court will not adopt KU's additional pleading requirement.

Because it uses a different standard, KU argues that Mr. Tao has not adequately pled a claim of wrongful termination. (Doc. 32 at 12-15.) Plaintiff responds that he need not make out

a prima facie case of wrongful termination at the motion to dismiss stage, and KU's argument attempts to impose a summary judgment standard onto the pleadings.  (Doc. 42 at 20.)

The court agrees with Plaintiff.  Because Defendant KU limits its argument to an erroneously strict definition of the elements of a prima facie case of discrimination, its motion must be denied.  KU is wrong to suggest that Mr. Tao must plead every detail of supposed "comparator" employees.  (Doc. 32 at 13-14.)  In fact, there is no indication in the authority provided by KU that comparators must be pled at all; those cases actually provide the opposite.  *See Smith v. McDonough*, No. 22-6131, 2023 WL 2765898 at *4 (10th Cir. Apr. 4, 2023) ("*One method* by which a plaintiff can demonstrate an inference of discrimination is to show that the employer treated similarly situated employees more favorably.") (quoting *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011)) (emphasis added) (internal quotation marks omitted).  Comparably situated employees are not the only method by which Plaintiff may plead circumstances giving rise to an inference of discrimination under the Title VII test.

Moreover, as the Tenth Circuit has frequently admonished, Plaintiff need not "conclusively establish a prima facie case of discrimination, but it must contain more than threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ross v. Pentair Flow Technologies, Inc.*, No. 19-CV-2690, 2020 WL 1028304 at *4 (D. Kan. Mar. 3, 2020) (quoting *Bekkem v. Wilkie*, 915 F.3d 1258, 1274-75 (10th Cir. 2019)) (internal quotation marks and citation omitted).  All Plaintiff must plead are plausible allegations that he suffered an adverse employment action under circumstances giving rise to an inference of discrimination.  *McNellis*, 119 F.4th at 1139.  Plaintiff has done so.  He alleges that KU's refusals to reinstate him after acquittal demonstrate pretext.  (Doc. 27 at 25-26.)  He alleges that nine professors who had connections to other universities were not treated the same way he was.  (*Id.* at 22-23.)  He argues that KU's

13

conduct during his investigation and rapid collaboration with the federal government also demonstrate pretext. (*Id.* at 25-26.) Whether or not Mr. Tao will have the weight of the evidence to support these claims down the road is an open question, but he has enough to survive KU's motion to dismiss.

Accordingly, KU's motion to dismiss count II of the complaint is denied.

### C. Count III: Procedural Due Process Claim Against Defendants in Their Official Capacity

Tenured professors have a property interest in their employment and may not be deprived of it by state actors without adequate process under the Fourteenth Amendment to the United States Constitution. *See Perry v. Sinderman*, 408 U.S. 593, 600-02 (1972). Plaintiff alleges, through 42 U.S.C. § 1983, that Defendants Girod and Bichelmeyer, while acting in their official capacities have deprived him of that property interest without the required due process and refused to reinstate him after his criminal acquittal. (Doc. 27 at 26-27.)

The court views Plaintiff's count III as containing four bases of procedural due process violations. First and second, Plaintiff claims that his rights were violated when he was terminated without a hearing nor afforded an appeal. (Doc. 27 at 26.) Third, Plaintiff claims that his rights were violated when KU refused to reinstate him after his criminal acquittal. (*Id.* at 27.) Fourth, Plaintiff claims that his rights were violated again when KU refused to honor the original composition requirements of the FRB for Mr. Tao's appeal. (*Id.*)

Defendants Girod and Bichelmeyer argue that Plaintiff's claims are unfounded for multiple reasons. (Doc. 34 at 6-10.) First, they argue that they entered into an agreement with Plaintiff in which he waived his right to a termination hearing and an appeal. (*Id.* at 6-8.) Second, they argue that Mr. Tao's criminal trial served as the due process he was owed and consequently Defendants did not deny him any due process. (*Id.* at 8-9.) Finally, they argue that to the extent Mr. Tao

14

complains of a lack of a final hearing on his termination, a Kansas statutory review scheme provides him with an adequate remedy. (*Id.* at 9-10.) Plaintiff rebuts each of these contentions. (Doc. 42 at 12-16.) The court agrees with Defendants on each claim except Mr. Tao's claim he was deprived of a pre-termination hearing.

The court does not view Defendants' refusal to reinstate Mr. Tao as a valid procedural due process claim. A procedural due process claim contests the denial of process regarding the deprivation of an underlying liberty or property interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). A refusal to reinstate is not the denial of process but rather a refusal to grant a property interest. *Cf. Collvins v. Hennebold*, 585 F. App'x. 951, 954 (10th Cir. 2014) ("Mr. Collvins is saying that Mr. Hennebold should have taken specific action—reinstating him—not that Mr. Hennebold should have given him notice and a hearing before deciding to ignore the Appeals Board's ruling."). Therefore, it cannot serve as the basis for a deprivation of procedural due process claim. The court also does not view Defendants' refusal to constitute the FRB allegedly in accordance with Mr. Tao's employment contract as a valid basis for a procedural due process claim. Mr. Tao could theoretically have a claim for breach of contract against Defendants, but the Fourteenth Amendment does not mandate that Defendants constitute the FRB in a particular way. *Mathews*, 424 U.S. at 334 ("These decisions underscore the truism that '(d)ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.'") (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961) (alterations

in original)).  The Fourteenth Amendment is not a vessel through which the court will enshrine

Defendants' alleged contractual obligations into constitutional law.[5]

Though Plaintiff also states that he does not raise a post-termination claim, (Doc. 42 at 17,

n. 5), the court rejects the notion that the lack of an appeal or post-termination hearing deprives

Mr. Tao of constitutional due process.   The court agrees with Defendants that Mr. Tao had

adequate state law remedies for post-termination process under the Kansas Judicial Review Act

("KJRA").   (Doc. 34 at 9-10.)   Kansas courts have held that the KJRA is applicable to tenured

professors.  *Gaskill v. Fort Hays State Univ.*, 70 P.3d 693, 694-95 (Kan. Ct. App. 2003).   Moreover,

when an adequate state review remedy is available, federal courts have held that a plaintiff cannot

claim to have had his procedural due process denied.  *Pinder v. Mitchell*, 658 F. App'x. 451, 453

(10th Cir. 2016).  To the court's knowledge, Mr. Tao has not sought review under the KJRA.

That leaves the claim of termination without a hearing, which brings the court to the bulk

of the arguments raised by Defendants.  Generally speaking, notice and a hearing are fundamental

basics of procedural due process.  *Mathews*, 424 U.S. at 348 ("The essence of due process is the

requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and

opportunity to meet it.'") (internal citation omitted).  Defendants argue that Mr. Tao waived his

right to a hearing based on his initial conviction, citing to the parties' signed agreement.  The

relevant language is as follows: "The Parties agree that *if the Criminal Proceeding results in a

conviction*, Dr. Tao's dismissal as a tenured faculty member will be a final administrative action,

---

[5] It is because Plaintiff's motion for a preliminary injunction is premised upon this notion, that the composition of the FRB somehow offends the Due Process Clause, that Plaintiff's motion for a preliminary injunction is denied.  The dismissal of this piece of Plaintiff's due process claim renders it impossible that Plaintiff will succeed on the merits, even though Plaintiff's pre-termination hearing claim brought under the Due Process Clause survives, as explained below.

and Dr. Tao waives his right to appeal the dismissal or request a hearing before the FRB, except with respect to the University's decision to seek restitution." (Doc. 27 at 16) (emphasis added).

Defendants further point to the waiver agreement, which identifies the criminal district court case as the relevant case. (Doc. 44 at 2.) They argue that this shows any appeal or post-conviction relief is irrelevant because at the time of dismissal, a judgment of conviction had been entered in that case. (*Id.*) But this misses the mark. The later judgments of acquittal the district judge entered after her vacatur of the jury's convictions on wire fraud and Mr. Tao's successful appeal of his false statement conviction were also made in the district court criminal case. *See United States v. Tao*, No. 19-CR-20052-JAR-1, ECF Nos. 307, 356. Accordingly, Mr. Tao's right to procedural due process is unaffected by the agreement, regardless of the fact that when the University formalized his dismissal, a judgment of conviction had been entered. (*Id.*) It is not the Defendants' right to terminate that the court is concerned with but instead Mr. Tao's entitlement to a hearing. That right survives until the waiver of that right attaches. It has not because Mr. Tao was acquitted.

Plaintiff also submits case law that a conviction is not final once the initial verdict is rendered by a jury. (Doc. 42 at 22.) Rather, a conviction is not final until "judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition of certiorari elapsed or a petition for certiorari finally denied." *Griffith v. Kentucky*, 479 U.S. 314, 321, n. 6 (1987). While the cited authority is in the constitutional retroactivity context, the basic principle could still apply here. Defendants submit their own case law in the issue preclusion context that shows finality attaches immediately upon conviction. (Doc. 44 at 2-3.) Nevertheless, at this stage of the proceedings, the court will not determine as a matter of law that the waiver forecloses Plaintiff's due process claim.

Next, Defendants contend that Mr. Tao received adequate due process through his criminal trial and therefore is not entitled to any more process under the Fourteenth Amendment. (Doc. 34 at 8-9.) This argument also fails. Defendants cite cases reflecting that a criminal trial can serve as a substitute for a "name-clearing hearing." (Doc. 34 at 9.) But a name clearing hearing is far different than the issue here. The criminal trial was about Plaintiff's alleged wire fraud and false statements, but as Plaintiff argues, the trial did not address every issue related to Mr. Tao's employment at KU. (Doc. 42 at 23-24.) This stands in contrast to a name clearing hearing and the cases cited by Defendants where the interests at stake are essentially the same. *See, e.g.*, *Graham v. City of Philadelphia*, 402 F.3d 139, 146 (3d Cir. 2005) ("Nor does Graham suggest that he might offer at a name-clearing hearing new evidence or evidence not presented at trial supporting his actual innocence.").

As a result of the foregoing, Defendants' motion to dismiss Plaintiff's procedural due process claim regarding a pre-termination hearing is denied. The remainder of Plaintiff's procedural due process claims are dismissed.

### D. Count IV: Procedural Due Process Claim Against Defendants in Their Individual Capacity

Count IV raises identical issues to count III and therefore the above analysis applies. The only remaining claim is that of deprivation of a pre-termination hearing. That said, because it applies to Defendants in their individual capacities, Defendants raise statute of limitations and qualified immunity defenses. (Doc. 34 at 10-13.) Because the court finds Defendants are entitled to qualified immunity, it does not address the statute of limitations defense. The court parses the qualified immunity arguments below.

"Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Callahan v. Unified Government of Wyandotte Cnty.*, 806 F.3d 1022, 1026 (10th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (internal quotation marks omitted). "The purpose of the doctrine is to provide government officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 150-51 (2017)). To serve that end, a plaintiff can only overcome a defense of qualified immunity if he can establish: "(1) the defendant violated a federal statutory or constitutional right and (2) the right was clearly established at the time of the defendant's conduct." *Id.* (citing *Dist. of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018)).

Qualified immunity defenses often rise and fall on whether the right a defendant is alleged to have violated is "clearly established." *See e.g.*, *id.* Here, the court assumes *arguendo* that there has been a violation of a federal statutory or constitutional right, namely, the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The court assumes for the purposes of this section that Defendants Girod and Bichelmeyer deprived Defendant of due process when they terminated him without a hearing immediately following his conviction in federal court. Therefore, the survivability of Defendants' qualified immunity defense turns on whether that right was clearly established. The court concludes it was not.

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal citation and quotation marks omitted). "The dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Id.* at 12 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (emphasis removed)). "Ordinarily . . . there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other

courts must have found the law to be as the plaintiff maintains." *Ullery*, 949 F.3d at 1291 (internal quotation marks and citation omitted). Therefore, the court begins its analysis by "consider[ing] cases of controlling authority in this jurisdiction, which would settle the question before us." *Id.* at 1292. Here, for Plaintiff to overcome qualified immunity the court must find that it is a clearly established statutory or constitutional right for Plaintiff to have his criminal proceeding work through its final appeal before Defendants could terminate him when a written agreement made termination without a hearing contingent on a conviction in that criminal proceeding.

Plaintiff does not present the court with any such cases and instead repeats the axiom that qualified immunity does not require an identical case on all facts. (Doc. 42 at 28.) While this is true, more than general allegations are required. *See Ullery*, 949 F.3d at 1291 ("Accordingly, the Supreme Court has repeatedly admonished circuit courts 'not to define clearly established law at a high level of generality.'") (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)). Tao attempts to overcome qualified immunity with such general assertions. He claims that it is clearly established that: (1) "Tenured professors have a property interest in their employment and a constitutional right to due process", (2) "Individuals are innocent until proven guilty", and (3) "Criminal cases and convictions are not considered final until all appeal rights have been exhausted." (Doc. 42 at 26-27.) But this is simply a collection of generalized principles that are not in dispute. What these principles lack is reference to factual contexts at all like the one in the instant case. Plaintiff does not point to any similar cases to this one and the court has not found any. As a consequence, Defendants' motion to dismiss count IV is granted.

### E. Counts V & VI: Equal Protection Clause Claims Against Defendant Girod in His Official Capacity

Plaintiff's count V and count VI are claims under the Equal Protection Clause of the United States Constitution brought against Defendant Girod in his official capacity. (Doc. 27 at 29-31.)

Count V is brought through 42 U.S.C. § 1983 and alleges general discrimination. Count VI is brought under 42 U.S.C. § 1981 and is seeking relief through 42 U.S.C. § 1983 for discrimination depriving him of the full benefits of his employment contract. The analysis under these counts is the same and identical to a claim under Title VII of the Civil Rights Act of 1964. *See Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991) ("Cases establish that, in racial discrimination suits, the elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in *McDonnell Douglas,* whether that case is brought under §§ 1981 or 1983 or Title VII.") (citing *Gairola v. Virginia Dep't of Gen Servs.*, 753. F.2d 1281, 1285-86 (4th Cir 1985) and *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1260 (10th Cir. 1988)).

That means the court's *McDonnell Douglas* analysis performed under count II is applicable here as well. Under count II the court found that Plaintiff has pled enough to survive Defendant's motion to dismiss. That holding applies here as well. The only arguments raised by Defendant Girod in opposition to this conclusion are the same arguments Defendant KU raised against count II: that the nine comparator professors Mr. Tao alleged were treated differently than him are not specific enough. (Doc. 34 at 14-15.) For the same reasons the court explained above in count II, this argument fails. As a result, Defendant's motion to dismiss these counts must be denied.

## IV.    Conclusion

As a result of the foregoing, Defendant's motions to dismiss (Docs. 31, 33) are GRANTED IN PART and DENIED IN PART. Plaintiff's motion for a preliminary injunction (Doc. 46) is DENIED. In sum, what remains of the case is Plaintiff's count II Title VII wrongful termination claim against Defendant KU, his count III procedural due process claim against Defendants Girod and Bichelmeyer in their official capacities, and his Equal Protection Clause claims levied at Defendant Girod in his official capacity in counts V and VI.

IT IS SO ORDERED.  Dated this 29th day of January, 2026.


s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE