**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **FENG (FRANKLIN) TAO,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 2:25-cv-02005-JWB-BGS** |
| **UNIVERSITY OF KANSAS, ET AL.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants, the University of Kansas ("University"), Dr. Douglas Girod, and Dr. Barbara Bichelmeyer (collectively, "Defendants"), provide the following Answers and Affirmative Defenses to the Second Amended Complaint of Plaintiff Feng (Franklin) Tao ("Tao"). Defendants expressly state that, in light of the Court's ruling on Defendants' respective motions to dismiss, Defendants Dr. Girod and Dr. Bichelmeyer remain as parties to this case only in their official capacities as officers of the University and answer accordingly.

1.      Professor Tao is a leading researcher and academic in the field of chemistry and chemical engineering. He has published over 210 peer-reviewed articles and three books, and his work has been cited over 17,000 times. Professor Tao's contributions to his field have been lauded for decades and have been recognized with over 20 honors and awards.

**ANSWER: Defendants admit that Tao is a researcher and academic in the field of chemical engineering who has authored academic publications and received academic awards. Defendants lack information sufficient to admit or deny the precise number of publications Tao has authored, the number of times his work has been cited, or the number**

of awards he has received, and, therefore, deny those allegations. To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 1.

2.     Professor Tao was born in China and came to the United States to pursue his PhD at Princeton University in 2002. After receiving his PhD and completing postdoctoral research at the University of California at Berkeley, Professor Tao started his independent academic career as a tenure-track assistant professor of chemistry at the University of Notre Dame. In 2014, the University of Kansas ("KU") actively recruited him and offered him a position as a tenured associate professor in the chemical engineering department. After accepting this tenured faculty position in July 2014, Professor Tao then moved his family—including his then nine-year-old son and daughter—certain team members, and his lab instruments, to KU in August 2014.

**ANSWER:  Defendants admit that Tao identifies as being of Chinese descent, previously worked as a professor at the University of Notre Dame, and became a tenured professor at the University in about 2014. Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 2 and, therefore, deny the same.**

3.     From November 2018 through February 2022, the U.S. Department of Justice ("DOJ") operated a "China Initiative" which was ostensibly designed to thwart Chinese national security threats including economic espionage. The program has been widely criticized for racial profiling, xenophobia, and discrimination against Chinese Americas.[1]

**ANSWER:  Defendants acknowledge public reporting that the Department of Justice ("DOJ") operated a so-called "China Initiative" during the approximate date range alleged**

___

[1] *See, e.g.*, Yu Xie, et al., <u>Caught in the crossfire: Fears of Chinese-American scientists</u>, Proc. Nat'l Acad. Sci. U.S.A., June 27, 2023.

in Paragraph 3.  **Defendants have no direct knowledge or involvement in the DOJ's planning or operations under this alleged initiative.  The publications cited by Tao in Paragraph 3 are irrelevant and speak for themselves as written documents.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 3.**

4.    In 2019, as a result of discriminatory and illegal actions taken by KU, Professor Tao became the first professor arrested under the China Initiative, with baseless and humiliating charges brought against him by the DOJ.

**ANSWER:  Defendants admit that Tao was a professor and was arrested in 2019 by federal law enforcement.  Defendants deny the remaining allegations in Paragraph 4.**

5.    Professor Tao endured over three years of criminal prosecution plus two years of appellate litigation which inflicted substantial damage to his reputation, his career, his life savings, and his emotional well-being.

**ANSWER:  Defendants admit that Tao was criminally prosecuted for approximately three years by federal law enforcement agencies and participated in approximately two years of appellate litigation stemming from his criminal charges and original criminal conviction. Defendants deny the remaining allegations in Paragraph 5.**

6.    After his arrest, KU placed Professor Tao on administrative leave, but before the criminal proceedings had concluded, and without procedural process guaranteed to tenured faculty, it unfairly and unlawfully terminated Professor Tao.  Even after he was ultimately acquitted of all

charges, KU refused to reinstate Professor Tao to its faculty. To this day, it refuses to reinstate Professor Tao.

**ANSWER:** **Defendants admit that Tao was placed on administrative leave after being arrested by federal law enforcement agencies, that Tao's employment at the University was terminated following his original criminal conviction by the United States District Court for the District of Kansas, and that Tao's conviction was eventually reversed. Defendants deny the remaining allegations in Paragraph 6.**

7.    KU's actions and discrimination against its own tenured professor – before, during, and after his criminal prosecution, and even after his full exoneration—violated its contractual, ethical, and legal obligations to Professor Tao. Among other things, it failed to objectively investigate wild accusations by a disgruntled visiting student who had tried to extort Professor Tao, it rushed to judgment based on xenophobia and racial prejudice, it sought out, collected, and provided false and misleading information to the DOJ, it unlawfully surveilled Professor Tao, it collaborated with the DOJ to persecute Professor Tao, it unlawfully terminated him before his criminal proceedings even concluded, and it refused—and continues to refuse—to reinstate him despite his acquittal on all counts.

**ANSWER:** **Denied.**

8.    KU also violated its own policies and procedures for faculty as well as a July 2, 2020 agreement it signed with Professor Tao, promising to wait until the end of the criminal proceedings before taking any action on his employment status.

**ANSWER:** **Denied.**

4

9.      Professor Tao's life, career, reputation, and finances are in shambles as a result of KU's egregious conduct.   Rather than embracing academic rigor and enlightened, critical judgment, the university allowed itself to join in fear mongering and racist witch hunting.  It failed its own vision of being a "home to innovative research and the constant pursuit of knowledge" and to be guided by "perseverance, positivity, and restless innovation."   KU was wrong, should be ashamed of its actions, and deserves to be held accountable for the damage it caused to Professor Tao.

**ANSWER:  Denied.**

## PARTIES

10.    Plaintiff Franklin Tao resides in Kansas and is a citizen of Kansas.

**ANSWER:  Defendants lack information sufficient to admit or deny the allegations in Paragraph 10 and, therefore, deny the same.**

11.    Professor Tao is a U.S. permanent resident.  He is East-Asian, Han-Chinese, and of Chinese national origin.

**ANSWER:  Defendants admit that Tao identifies as being of Chinese descent. Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 11 and, therefore, deny the same.**

12.    Defendant KU is a state-supported educational institution whose main campus is located in Lawrence, Kansas.  KU is an "employer" within the meaning of Title VII.

**ANSWER:  Defendants admit that the University is a public university in the State of Kansas with its main campus being located in Lawrence, Kansas.  The remainder of Paragraph 12 contains legal conclusions to which no response is required.  To the extent any response is required, Defendants admit that the University is an "employer" subject to Title VII.**

13.     Upon information and belief, Defendant Douglas Girod resides in Kansas and is a citizen of Kansas.

**ANSWER:  Admitted.**

14.     Douglas Girod became Chancellor of KU in July 2017 and has served continuously in that role since July 2017.

**ANSWER: Admitted.**

15.     As Chancellor, Douglas Girod has the authority to hire, terminate, and reinstate professors at KU.  The Chancellor is the ultimate supervisor of all KU employees and administrators.

**ANSWER:  Defendants admit that Chancellor Girod is the chief executive officer who generally oversees the University's operations, consistent with Kansas law, policies enacted by the University's Board of Regents, and the University's operational policies and procedures.  Defendants deny that Chancellor Girod has unilateral and unfettered authority over all personnel decisions pertaining to faculty at the University.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 15.**

16.    Douglas Girod's actions as Chancellor of KU were taken "under color of state law" within the meaning of 42 U.S.C. § 1983.

**ANSWER:  Paragraph 16 contains legal conclusions to which no response is required. To the extent any response is required, Defendants admit that Chancellor Girod's decisions with respect to Tao were made in course and scope of his role as Chancellor of the University, a public university of the state of Kansas.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 16.**

17.    Upon information and belief, Defendant Barbara Bichelmeyer resides in Kansas and is a citizen of Kansas.

**ANSWER:  Admitted.**

18.    Barbara Bichelmeyer became Provost and Executive Vice Chancellor of KU in February 2020 and has served continuously in that role since February 2020.

**ANSWER:  Admitted.**

19.    As Provost and Executive Vice Chancellor, Barbara Bichelmeyer has the authority to hire, terminate, and reinstate professors at KU.

**ANSWER:  Defendants admit that Dr. Bichelmeyer, is currently the University's Provost and Executive Vice Chancellor.  Defendants deny that Dr. Bichelmeyer has unilateral and unfettered authority over all personnel decisions pertaining to faculty at the**

University.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 19.

20.     Barbara Bichelmeyer's actions as Provost and Executive Vice Chancellor at KU were taken "under color of state law" within the meaning of 42 U.S.C. § 1983.

**ANSWER:  Paragraph 20 contains legal conclusions to which no response is required. To the extent any response is required, Defendants that any decisions made by Dr. Bichelmeyer with respect to Tao were made in course and scope of her role as Provost and Executive Vice Chancellor of the University, a public university of the state of Kansas.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 20.**

## JURISDICTION & VENUE

21.     This is an employment case arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), 42 U.S.C. § 1983, and 42 U.S.C. § 1981.

**ANSWER:  Paragraph 21 contains legal conclusions to which no response is required. To the extent any response is required, Defendants admit that Tao purports to assert claims under Title VII, 42 U.S.C. § 1983, and 42 U.S.C. § 1981.  Defendants deny that Tao's purported claims have any merit whatsoever.  Defendants deny any remaining allegations contained in Paragraph 21.**

22.     This Court has subject matter jurisdiction as this case arises under federal law and presents a federal question.  *See* U.S.C. § 1331.

**ANSWER**:  Paragraph 22 contains legal conclusions to which no response is required. To the extent any response is required, Defendants admit that this Court has federal question jurisdiction over at least some of Tao's remaining claims. The University maintains its position that certain of Tao's claims are barred by Eleventh Amendment immunity, which deprives the Court of subject matter jurisdiction over those claims.  Defendants deny that Tao's purported claims have any merit whatsoever.  Defendants deny any remaining allegations contained in Paragraph 22.

23.     This Court has personal jurisdiction over defendants, all of whom reside in Kansas. Moreover, the vast majority, if not all, of the unlawful acts and practices set forth below occurred in the State of Kansas.

**ANSWER**:  Paragraph 23 contains legal conclusions to which no response is required. To the extent any response is required, Defendants admit that this Court has personal jurisdiction over Defendants.  Defendants deny that Tao's purported claims have any merit whatsoever.  Defendants deny any remaining allegations contained in Paragraph 23.

24.     Venue is proper as the relevant events occurred in the District of Kansas.

**ANSWER**:  Paragraph 24 contains legal conclusions to which no response is required. To the extent any response is required, Defendants admit that venue is proper in this Court based on Tao's purported claims.  Defendants deny that Tao's purported claims have any merit whatsoever.  Defendants deny any remaining allegations contained in Paragraph 24.

25.     On June 16, 2023, Professor Tao filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging ongoing violations of Title VII by KU related to his termination from his tenured professorship at the university.  He specifically charged that the discrimination based on race, color, and national origin started on August 20, 2019 and was "continuing" in nature.

**ANSWER:  Defendants admit that Tao filed a Charge of Discrimination with the EEOC on about August 20, 2019.  That Charge of Discrimination speaks for itself as a written document.  To the extent any further response is required, Defendants deny the remaining allegations in Paragraph 25.**

26.     On October 7, 2024, the EEOC issued a Notice of Right to Sue.  Professor Tao received the Notice of Right to Sue on October 7, 2024.[2]

**ANSWER:  Defendants admit that the EEOC issued a Notice of Right to Sue on about October 7, 2024, in response to Tao's original Charge of Discrimination.  The EEOC's Notice of Right to Sue speaks for itself as a written document.  To the extent any further response is required, Defendants deny the remaining allegations in Paragraph 26.**

## STATEMENT OF FACTS

### "The 'China Initiative'"[3]

---

[2] On May 1, 2025, Professor Tao filed a second charge of discrimination with the EEOC to provide additional detail on his prior charge, and also to raise retaliation allegations based on KU's conduct after Professor Tao filed the first charge.  That second charge is still pending with the EEOC.

[3] Some of Tao's subheadings under the "Statement of Facts" improperly contain argument rather than factual material and Defendants' recitation of the subheadings for purposes of clarity and consistency in no way acts as an admission.

27.    The DOJ's China Initiative was officially launched in 2018 and created task forces within the FBI and federal prosecution offices to purportedly target economic espionage.  The program was terminated in 2022 because it was found to fuel racial profiling and chill advances in the U.S. scientific community.[4]  The stated goal of targeting economic espionage and hacking had turned into a focus on disclosures on academic forms.[5]  Accordingly, "[t]here was a clear mismatch between the severity of the crimes that the DOJ and FBI alleged publicly and the charges which the DOJ prosecuted."[6]

**ANSWER:  Defendants acknowledge public reporting that federal law enforcement agencies operated a so-called "China Initiative" during the approximate dates alleged in Paragraph 27.  Defendants have no direct knowledge or involvement in the DOJ's planning or operations under this alleged initiative.  Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 27 and, therefore, deny the same. Defendants further answer that the publications cited by Tao in Paragraph 27 are irrelevant and speak for themselves as written documents.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 27.**

28.    Consistent with its name, the China Initiative targeted individuals of Chinese descent.  In addition to promoting racial profiling and bias, the China Initiative ultimately proved

---

[4] Ryan Lucas, The Justice Department is ending its controversial China Initiative, NPR (February 23, 2022, 9:15 PM), https://www.npr.org/2022/02/23/1082593735/justice-department-china-initiative; *see* Jenny J. Lee, et al., Racial Profiling Among Scientists of Chinese Descent and Consequences for the U.S. Scientific Community, Committee of 100 (October 28, 2021); *supra* n.1.

[5] Eileen Guo, et al., The US Crackdown on Chinese economic espionage is a mess.  We have the data to show it, MIT Technology Review (December 2, 2021), https://www.technologyreview.com/2021/12/02/1040656/china-initiative-us-justice-department/.

[6] Anton Louthan, The China Initiative and its Implications for American Universities, Foreign Policy Research Institute (April 11, 2022), https://fpri.org/article/2022/04/the-china-initiative-and-its-implications-for-american-universities/.

to be a statistical failure: "in over three years of investigations, over 150 defendants, and at least 77 cases, the China Initiative secured just one single conviction in a court of law.[7]

**ANSWER**:  **Defendants lack information sufficient to admit or deny the allegations in Paragraph 28 and, therefore, deny the same.  Defendants have no direct knowledge or involvement in the DOJ's planning or operations under this alleged initiative.  Defendants further answer that the publications cited by Tao in Paragraph 28 are irrelevant and speak for themselves as written documents.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 28.**

29.    Professor Tao was the first professor arrested under the China Initiative, and also a prime example of its racial profiling and unlawful targeting of innocent academics who happen to be Chinese.

**ANSWER**:  **Defendants admit that Tao was a professor and was arrested by federal law enforcement agencies.  Defendants deny the remaining allegations in Paragraph 29.**

### "Professor Tao's Academic Career"

30.    Professor Tao moved to the United States in 2002 after being accepted into Princeton University's PhD program.

**ANSWER**:  **Defendants lack information sufficient to admit or deny the allegations in Paragraph 30 and, therefore, deny the same.**

---

[7] <u>CAPAC Members Applaud the Second Anniversary of the Termination of the China Initiative</u>, Congressional Asian Pacific American Caucus (February 23, 2024), https://capac-chu.house.gov/press-release/capac-members-applaud-second-anniversary-termination-china-initiative.

31.     In 2006, Professor Tao received a PhD in Chemistry from Princeton University.

**ANSWER:  Defendants lack information sufficient to admit or deny the allegations in Paragraph 31 and, therefore, deny the same.**

32.     From 2006-2010, he served as a postdoctoral fellow at the University of California, Berkeley.

**ANSWER:  Defendants lack information sufficient to admit or deny the allegations in Paragraph 32 and, therefore, deny the same.**

33.     In 2010, Professor Tao joined the faculty at the University of Notre Dame as a tenure-track assistant professor in the Department of Chemistry and Biochemistry.

**ANSWER:  Defendants admit that Tao was professor at the University of Notre Dame prior to being hired by the University.  Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 33 and, therefore, deny the same.**

34.     In 2014, he was recruited by KU to join its faculty as tenured associate professor in the Department of Chemical and Petroleum Engineering.

**ANSWER:  Defendants admit that Tao was hired as a tenured associated professor in the University's Department of Chemical and Petroleum Engineering in 2014.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 34.**

35.    Academic tenure is an employment status whereby a tenured faculty member can only be terminated for justifiable cause or under extraordinary circumstances.

**ANSWER**:  **Defendants admit that academic tenure is an employment status defined by relevant law and specific, individual contractual agreements.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 35.**

36.    Professor Tao moved his family to Kansas and began his employment as a tenured faculty member at KU in August 2014.

**ANSWER**:  **Defendants admit that Tao began working as a tenured professor at the University in about the fall of 2014.  Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 36 and, therefore, deny the same.**

37.    Professor Tao's research specialties include sustainable chemical transformation, energy conversion, environmental sustainability, and clean energy harvest.  At KU, Professor Tao built a lab and led a research group focused on nanocatalysis—the use of nanomaterials as catalysts to accelerate and improve chemical and energy transformations.

**ANSWER**:    **Defendants admit that Tao specialized in the fields described in Paragraph 37 and that Tao had a lab at the University focused on nanocatalysis research. To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 37.**

38.    Professor Tao's research projects have been supported by the National Science Foundation ("NSF") and U.S. Department of Energy ("DOE").  Between 2012 and 2019, Professor

14

Tao was awarded over $4 million across twelve NSF and DOE projects which totaled over $10 million.

**ANSWER**: **Defendants admit that Tao's research projects were supported by the NSF and DOE, and that projects Tao worked on received millions of dollars in funding from those entities.  Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 38 and, therefore, deny the same.**

39.    Professor Tao also taught numerous undergraduate and graduate level courses at KU.  He has served as a research advisor to over 15 graduate students at the University of Notre Dame and KU.

**ANSWER**:  **Defendants admit that Tao was an instructor for various undergraduate and graduate courses at the University during his time as a professor, and that he served as a research advisor to graduate students at the University  during that period.  Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 39 and, therefore, deny the same.**

40.    Professor Tao has received numerous academic awards and honors.  From KU alone, Professor Tao received the Miller Research Award in 2014, the Bellow Scholar Award in 2018, and the University Scholarly Achievement Award in 2019—the highest honor awarded to KU midcareer faculty members, recognizing "truly outstanding" scholarly contributions.

**ANSWER**: **Defendants admit that Tao received various academic awards and honors in the course of his employment as a professor at the University, including those identified**

in Paragraph 40.  **To the extent any further response is required, Defendants deny the remaining allegations in Paragraph 40.**

41.    On April 3, 2019, when it announced the University Scholarly Achievement Awards, KU's Office of Public Affairs described Professor Tao as follows:

> **Franklin (Feng) Tao** joined the chemical & petroleum engineering faculty in 2014 And has demonstrated an outstanding record of scholarly achievement in his field.  He has enhanced KU's capability in the field of heterogeneous catalysis.  He has made distinguished contributions to the fields of rational design of catalysts and in situ/operando studies of catalysis at a molecular level with advanced techniques.  Tao is the recipient of a National Science Foundation CAREER award for his work, and he also has been named as a Fellow of the American Association for the Advancement of Science and Royal Society of Chemistry.

**ANSWER**:  **Admitted.**

42.    On April 24, 2019, Defendant Douglas Girod personally presented the University Scholarly Achievement Award to Professor Tao and praised him for his research contributions and numerous publications and citations.  He commended Professor Tao (and the other three award recipients) for having "helped to elevate our university through their work" and said his "inspiring achievements demonstrate the breadth and depth of the contributions to society that are possible through the work of one of America's leading research universities."

**ANSWER**:  **Defendants admit that Chancellor Girod awarded Tao with the University Scholarly Achievement Award in April of 2019 and complimented Tao consistent with the quotations contained in Paragraph 42.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 42.**

**"The Baseless Prosecution of Professor Tao"**

43.     Less than a week later, on April 30, 2019, an anonymous source sent an online tip, falsely accusing Professor Tao of "espionage" based on "internet exploration" purportedly showing that he held another full-time position in China.

**ANSWER**:  **Defendants admit that the University received a complaint concerning Tao's affiliation with a Chinese institution ("Fuzhou") in the spring of 2019.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 43.**

44.     At the time, KU's Office of Global Operations & Security was headed by Director Carl Taylor, a former military intelligence officer with the U.S. Army and civilian intelligence office with the Department of Defense.  Mr. Taylor developed and led the KU Office of Global Operations & Security to protect research and identify risks and threats university-wide.

**ANSWER**:  **Defendants admit that Carl Taylor was the Director of the University's Office of Global Operations and Security in 2019 and that Mr. Taylor is a former intelligence officer.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 44.**

45.     While heading the KU Office of Global Operations & Security, Mr. Taylor was also a co-Principal Investigator for KU's U.S. Intelligence Community Center for Academic Excellence (ICCAE) Program, founded in September 2017 to recruit and train students "to serve as qualified intelligence professionals to carry out the nation's long-term national security initiatives."

**ANSWER:** Defendants admit that Mr. Taylor was an investigator for the University's ICCAE Program and that the quotations in Paragraph 45 accurately quote an excerpt of the ICCAE Program's webpage, which speaks for itself. To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 45.

46.     Eager to be involved in a national security matter with the federal government, Carl Taylor reported the complaint to Douglas Girod and recommended that the allegations be shared with the FBI. Without speaking to Professor Tao, and without conducting any investigation of the source, the facts, or the circumstances, Chancellor Girod directed Mr. Taylor to report Professor Tao to the FBI.

**ANSWER:** Defendants admit that the complaint against Tao was shared with federal law enforcement agencies. To the extent any further response is required, Defendants deny the remaining allegations in Paragraph 46.

47.     On May 1, 2019, at Chancellor Girod's direction, Mr. Taylor reported Professor Tao to the FBI on May 1, 2019, describing the issue as "high" importance.

**ANSWER:** Defendants admit that the University reported the complaint and allegations against Tao to federal law enforcement agencies in 2019. To the extent any further response is required, Defendants lack information sufficient to admit or deny any remaining allegations in Paragraph 47 and, therefore, deny the same.

48.     In fact, the allegations by the anonymous source were completely false, and had been made by a visiting student at KU who was angry with Professor Tao for not giving her credit

on a paper.  The anonymous complainant had demanded $300,000 from Professor Tao for her allegedly unacknowledged effort and threatened to report him to the FBI for economic espionage if her demands were not met.  Professor Tao refused to be extorted.

**ANSWER:  Defendants deny that the complaint and allegations against Tao were completely false.  Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 48 and, therefore, deny the same.**

49.     Professor Tao had no idea that the visiting scholar had sent an online tip because KU did not tell him.  Rather than protecting its own faculty or giving him the benefit of the doubt, KU took action behind his back in an effort to confirm the sensational allegations on the second day of receiving the report.

**ANSWER:  Denied.**

50.     KU worked with the government throughout the spring and summer of 2019 to investigate and build a case against Professor Tao.

**ANSWER:  Defendants admit that the University responded to lawful requests and demands, including subpoenas, from, and lawfully cooperated with, federal law enforcement agencies pertaining to the allegations and criminal investigation concerning Tao.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 50.**

51.     On information and belief, Chancellor Girod authorized and directed Carl Taylor and Kimberly Grunewald, KU's Deputy General Counsel (later promoted to and currently holding

the position of General Counsel) to help the FBI in its investigation of Professor Tao, including through secret, unlawful surveillance of Professor Tao, the collection of incomplete and one-sided "evidence" against Professor Tao, and the fabrication of evidence against Professor Tao.

**ANSWER: Defendants admit that Kimberly Grunewald is currently the University's General Counsel and that the University responded to lawful requests and demands, including subpoenas, from, and lawfully cooperated with, federal law enforcement agencies pertaining to the allegations and criminal investigation concerning Tao. Defendants deny any remaining allegations in Paragraph 51.**

52.    When KU and the federal government found no evidence of espionage by Professor Tao, they shifted gears to try and develop criminal charges for wire fraud, program fraud, or false statement against Professor Tao.

**ANSWER: Denied.**

53.    For example, in the summer of 2019, KU made unplanned federal grant payments to Professor Tao so that his salary would meet the minimum threshold amount required for a program fraud charge.

**ANSWER: Denied.**

54.    At the FBI's request, KU also scrutinized every form ever submitted by Professor Tao looking for a misstatement. When it became clear that Professor Tao had never made an affirmative misstatement on any of the forms, KU worked to find a way to suggest that there was a material omission on one of the forms.

**ANSWER:  Denied.**

55.    Ultimately, KU developed a counter-factual position that Professor Tao had submitted a Conflict of Interest ("COI") form[8] in September 2018 that failed to disclose a relationship with Fuzhou University—a university in Fujian, China.

**ANSWER:  Defendants admit that the University discovered that Tao failed to make required disclosures concerning his affiliation with Fuzhou.  To the extent any further response is required, Defendants deny the remaining allegations in Paragraph 55.**

56.    Professor Tao did not certify or submit a COI form in 2018.

**ANSWER:  Defendants admit that Tao did not make required disclosures concerning his affiliation with Fuzhou.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 56.**

57.    Upon information and belief, the KU e-compliance system cloned a copy of a COI form that Professor Tao submitted prior to 2018 and, although he did not certify or submit a COI form in 2018, KU decided to treat it as submitted in order to assist the federal government in bringing a case against Professor Tao.

**ANSWER:  Defendants admit that Tao did not make required disclosures concerning his affiliation with Fuzhou.  Defendants deny the remaining allegations in Paragraph 57.**

---

[8] Faculty members are required to submit annual conflict of interest ("COI") forms, also known as Institutional Responsibilities forms, to disclose any "significant financial interests worth $5,000 or more" and "time commitments in external professional activities."

58.    In 2017, Fuzhou University contacted Professor Tao about potentially joining Fuzhou University as a professor of chemistry.  After a family visit to China in January 2018, Professor Tao's family decided they did not want to move to China and Professor Tao declined the offer from Fuzhou University.

**ANSWER:  Defendants admit that Tao had an affiliation with Fuzhou during the time he was employed as a professor at the University, including negotiating and agreeing on Tao's employment by Fuzhou.  Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 58 and, therefore, deny the same.**

59.    Professor Tao never signed an employment agreement with Fuzhou University.  He never contracted to work for Fuzhou University.

**ANSWER:  Denied.**

60.    A job offer from another university is not information that is customarily shared with current employers, or something that other KU faculty members disclose on COI forms.

**ANSWER:  Denied.**

61.    In early summer 2018, Professor Tao submitted a proposal to KU for research collaboration with Fuzhou University.  In conjunction with that proposal, Professor Tao also submitted a request for a course buyout for the Spring 2019 semester.  A course buyout in academia is a mechanism whereby a faculty member is released from teaching a course (by having a portion of their salary paid from an external source) to allow that faculty member to focus on research.

Professor Tao's request proposed that funds from the research collaboration would be used for the course buyout.

**ANSWER:  Defendants admit that Tao submitted a proposal to the University for a collaborative research project with Fuzhou in 2018 and that Tao requested a course buyout in the Spring 2019 semester.  Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 61 and, therefore, deny the same.**

62.     On June 25, 2018, Dr. Laurence Weatherley, the Chair of the Department of Chemical and Petroleum Engineering, approved Professor Tao's buyout request.  However, Fuzhou University did not move forward with the research collaboration and instead decided to work with a different professor.  Therefore, Professor Tao's Spring 2019 course buyout was ultimately funded by an NSF grant.

**ANSWER:  Defendants admit that Dr. Weatherley approved a buyout request from Tao during the Spring 2019 semester, that the University did not ultimately collaborate with Fuzhou on the project proposed by Tao, and that Tao arranged for his course buyout in the Spring 2019 to be paid using funds from an NSF grant.  Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 62 and, therefore, deny the same.**

63.     KU's Assistant Vice Chancellor for Research, Alicia Reed, would later tell the FBI (falsely) that KU had not approved the Spring 2019 course buyout request.

**ANSWER:  Denied.**

64.     In 2019, Professor Tao worked on a different course buyout proposal for Fuzhou University and was again engaged with KU about the potential collaboration.  Indeed, he reached out to KU's Office of Research in Spring 2019 to discuss.

**ANSWER:  Defendants lack information sufficient to admit or deny the allegations in Paragraph 64 and, therefore, deny the same.**

65.     Because KU was working to persecute Professor Tao behind his back, however, KU secretly reviewed and selectively forwarded certain of Professor Tao's communications about collaboration with Fuzhou University to the federal government.

**ANSWER:  Denied.**

66.     KU lied to Professor Tao to delay and avoid discussion with him on the subject, and never sought information or clarification from Professor Tao, because it was not interested in the truth.

**ANSWER:  Denied.**

67.     In July 2019, Professor Tao had a scheduled meeting with Chris Brown, KU's Vice Provost for Faculty Development, to discuss Fuzhou University. Carl Taylor suggested that Mr. Brown cancel the meeting because KU was intent on helping the federal government arrest Professor Tao and on supporting the false narrative it had developed with the federal government. At Mr. Taylor's request, Mr. Brown cancelled the meeting and lied to Professor Tao.

**ANSWER:  Defendants admit that there was a scheduled meeting between Tao and Dr. Brown in July of 2019 and that Dr. Brown later cancelled that meeting.  Defendants deny the remaining allegations in Paragraph 67.**

### "KU's Role in Professor Tao's Arrest and Superseding Indictment"

68.    In August 2019, KU worked with the FBI to arrange a surprise search of Professor Tao's lab and home on August 20, 2019.  Text exchanges between Kimberly Grunewald, Carl Taylor, and the FBI case agents reflect an improper collaboration between KU and the DOJ to target Professor Tao:

> Kimberly Grunewald: "Heard you boys are heading out tomorrow, which, from a personal & totally selfish standpoint, ticks me off, as I really want my Wonder Twins present tomorrow.  But duty calls.  So, keep us updated. And…be careful.  Seriously—if anything happens to you guys, I will kick both of your asses."
>
> FBI: "Ok mom."

**ANSWER:  Defendants state that any alleged written communications between University officials and federal law enforcement speak for themselves as written documents. Defendants lack information sufficient to admit or deny any remaining allegations in Paragraph 68 and, therefore, deny the same.**

69.    On August 21, 2019, based largely on "evidence" provided by KU, the government arrested and charged Professor Tao at his home with one count of wire fraud and three counts of program fraud.

**ANSWER:  Defendants admit that Tao was arrested in August 2019 by federal law enforcement agencies.  Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 69 and, therefore, deny the same.**

70.    The wire fraud count was based on the COI form allegedly submitted by Professor Tao in September 2018 that failed to disclose a relationship with Fuzhou University.  The program fraud counts alleged that by failing to disclose his relationship with Fuzhou University on the form, Professor Tao defrauded KU of his salary, and the federal funding agencies.

**ANSWER:  Defendants state that Tao's criminal charges prosecuted by federal law enforcement agencies speak for themselves.  Defendants admit that Tao did not make required disclosures concerning his affiliation with Fuzhou.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 70.**

71.    Upon learning that Professor Tao had been placed in custody, Kimberly Grunewald congratulated the FBI by phone text: "Job well done, gentlemen.  Congrats, and thanks."

**ANSWER:  Defendants state that any alleged written communications between University officials and federal law enforcement speak for themselves as written documents. Defendants lack information sufficient to admit or deny any remaining allegations in Paragraph 71 and, therefore, deny the same.**

72.    Upon his arrest, KU placed Professor Tao on administrative leave and banned him from campus.  KU threatened to have him arrested if he appeared on campus.

**ANSWER:  Defendants admit that Tao was arrested by federal law enforcement agencies and that, following his arrest, Tao was placed on administrative leave with his access to campus restricted.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 72.**

73.     Following Professor Tao's arrest, KU continued to actively work with the government to look for evidence that could support additional criminal charges against Professor Tao, or to strengthen the government's case.

**ANSWER**:  **Defendants admit that the University responded to lawful requests and demands, including subpoenas, from, and lawfully cooperated with, federal law enforcement agencies pertaining to the allegations and criminal investigation concerning Tao.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 73.**

74.     For example, in September 2019, Carl Taylor directed the KU Center for Technology Commercialization to run searches in its database to confirm the absence of the name Luan Nguye (Professor Tao's post-doc researcher at KU) on patent applications.  Mr. Taylor then forwarded the information to the federal government to assist it in developing a theory that Professor Tao had stolen intellectual property from Mr. Nguyen.

**ANSWER**:  **Defendants admit that the University responded to lawful requests and demands, including subpoenas, from federal law enforcement agencies pertaining to the allegations and criminal investigation concerning Tao.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 74.**

75.     When that theory did not hold, in late October 2019, the government asked Carl Taylor and Kimberly Grunewald to go back through all of his patent applications to try to find false statements, calling it an important "tactical move."  Carl Taylor told the government that he

and Ms. Grunewald would add it to their list.   They then recruited the Vice Chancellor for Research, Simon Atkinson, and the Assistant Vice Chancellor for Research, Alicia Reed, to assist them with this endeavor.

**ANSWER**:  **Defendants admit that the University responded to lawful requests and demands, including subpoenas, from federal law enforcement agencies pertaining to the allegations and criminal investigation concerning Tao.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 75.**

76.     On January 15, 2020, the government filed a first superseding indictment, charging Professor Tao with two counts of wire fraud and one count of program fraud.

**ANSWER**:  **Defendants admit that federal law enforcement agencies filed a first superseding indictment against Tao asserting criminal charges on about January 15, 2020. Defendants state that the criminal indictment speaks for itself as a written document.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 76.**

77.     On information and belief, throughout 2020, KU continued to assist the federal government in persecuting Professor Tao and perpetuating lies and inflammatory accusations to damage his reputation and destroy his career.

**ANSWER**:  **Defendants admit that the University responded to lawful requests and demands from federal law enforcement agencies pertaining to the allegations and criminal investigation concerning Tao.  Defendants deny the remaining allegations contained in Paragraph 77.**

78.    On June 24, 2020, the government filed a second superseding indictment, charging Professor Tao with seven counts of wire fraud and three counts of false statements.

**ANSWER**:  **Defendants admit that federal law enforcement agencies filed a second superseding indictment against Tao asserting criminal charges on about June 24, 2020. Defendants state that the criminal indictment speaks for itself as a written document.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 78.**

79.    In October 2020, KU's radio station, Kansas Public Radio ("KPR"), which covers urban and rural areas of Kansas as well as parts of Missouri, broadcast a false news story that Professor Tao was arrested for being a spy who stole intellectual property and secretly worked for a university in China while employed at KU.  Despite requests to do so, KU and KPR refused to correct the false and defamatory statement until Professor Tao's counsel demanded they do so, and then only printed a one sentence correction on the website.

**ANSWER**:  **Defendants admit that KPR broadcast a story concerning the criminal investigation of Tao by federal law enforcement agencies around October of 2020, and that a correction was posted on KPR's webpage clarifying that Tao was charged for fraud as opposed to espionage.  The correction on KPR's webpage speaks for itself.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 79.**

**"KU Terminates Professor Tao and Continuously Refuses to Reinstate Him"**

80.    As part of the KU faculty, Professor Tao was entitled to certain rights under the KU

Faculty Code of Rights, Responsibilities, and Conduct ("FCRRC").

**ANSWER:  Paragraph 80 contains legal conclusions to which no response is required.**

**To the extent any response is required, Defendants admit that the University maintains a**

**Faculty Code of Rights, Responsibilities, and Conduct ("FCRRC"), which speaks for itself**

**as a written document.  Defendants deny any remaining allegations contained in Paragraph**

**80.**

81.    Article III.7 of the FCRRC states:

> Faculty members have a right to due process in all disciplinary matters.
> Faculty members have the right to peer judgment through the hearing
> process.  The sanctions listed in Article VI of this Code may not be imposed
> upon a faculty member without notice of the charges against him or her and
> the opportunity to request a hearing before the Judicial Board or the Faculty
> Rights Board.

**ANSWER:  Defendants state that the FCRRC speaks for itself as a written document.**

**To the extent any further response is required, Defendants admit that Paragraph 81**

**accurately quotes an excerpt from Article III.7 of the FCRRC.  To the extent any further**

**response is required, Defendants deny any remaining allegations in Paragraph 81.**

82.    Article VI of the FCRRC states that "[s]anctions of censure, suspension, or

dismissal shall be applied only after the faculty member has the opportunity for a hearing before

the Faculty Rights Board."

**ANSWER:  Defendants state that the FCRRC speaks for itself as a written document.**

**To the extent any further response is required, Defendants admit that Paragraph 82**

accurately quotes an excerpt from Article VI of the FCRRC.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 82.

83.     The KU Procedure for Appeals to the Faculty Rights Board for Tenure and Promotion Decisions (the "Procedure for Appeals") provides that, after the Provost makes a negative recommendation, the faculty member may file an appeal with the Faculty Rights Board ("FRB") and request a hearing on the provost's recommendation.

**ANSWER:  Defendants state that the Procedures for Appeals to the Faculty Rights Board for Tenure and Promotion Decisions speaks for itself as a written document.  To the extent any further response is required, Defendants deny the allegations in Paragraph 83.**

84.     On September 17, 2019, before trial, the KU Interim Provost & Executive Vice Chancellor, Carl Lejuez, recommended dismissal of Professor Tao as a tenured faculty member (the "Proposed Administrative Action").   Chancellor Douglas Girod agreed with the recommendation.

**ANSWER:  Defendants admit that on about September 17, 2019, Dr. Carl Lejuez, the University's Interim Provost & Executive Vice Chancellor at the time, recommended Tao's employment as a tenured faculty member at the University be terminated.  To the extent any further response is required, Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 84 and, therefore, deny the same.**

85.     On February 14, 2020, Carl Lejuez informed Professor Tao that KU believed it "is still appropriate" to terminate him.

**ANSWER:  Admitted.**


86.    Two weeks later, on February 28, 2020, Carl Lejuez notified Professor Tao of KU's intention to formally dismiss him on March 9, 2020.

**ANSWER:  Admitted.**


87.    On March 13, 2020, Professor Tao appealed and requested a hearing on the Proposed Administrative Action to the FRB under the Procedure for Appeals.

**ANSWER:  Admitted.**


88.    On April 6, 2020, in response to Professor Tao's request, Carl Lejuez sent a letter to the FRB listing a Statement of the Charges and stating that the FRB will conduct a hearing on the charges at a time and place to be communicated to Professor Tao.

**ANSWER:  Admitted.**


89.    On July 2, 2020, Professor Tao and KU's Provost and Executive Vice Chancellor, Dr. Barbara Bichelmeyer ("Vice Chancellor Bichelmeyer"), signed an agreement (the "July 2, 2020 Agreement) to suspend the appeal and any FRB hearing under the Procedure for Appeals until the conclusion of the criminal proceeding.  Chancellor Douglas Girod approved the July 2, 2020 Agreement.

**ANSWER:  Defendants admit that Tao and the University's officers entered into an agreement on about July 2, 2020, with Tao to suspend FRB proceedings.  Defendants state**

that the July 2, 2020, Agreement speaks for itself as a written document.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 89.

90.    The July 2, 2020 Agreement includes provisions that state:

> 3. At the conclusion of the Criminal Proceeding, the University has the right to reinstate the Proposed Administrative Action . . .
> . . .
>
> 10. The Parties agree that if the Criminal Proceeding results in a conviction, Dr. Tao's dismissal as a tenured faculty member will be a final administrative action, and Dr. Tao waives his right to appeal the dismissal or request a hearing before the FRB, except with respect to the University's decision to seek restitution. If Dr. Tao is convicted in the Criminal Proceeding, the University will notify Dr. Tao of any Proposed Administrative Action seeking restitution, which Dr. Tao shall have the right to appeal.
>
> 11. The Parties agree that if the Criminal Proceeding is dismissed or results in an acquittal, Dr. Tao's appeal of the Proposed Administrative Action, if reinstated or revised by the University, will be unabated, and the University will resubmit a Statement of Charges to the FRB.

**ANSWER**:  **Defendants admit that Paragraph 90 accurately quotes excerpts of the July 2, 2020, Agreement.  Defendants further state that the July 2, 2020, Agreement speaks for itself as a written document.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 90.**

91.    On or about March 22, 2022, Professor Tao's trial on six counts of wire fraud and two counts of making a false statement began.[9]

**ANSWER:  Admitted.**

---

[9] On February 14, 2022, the District Court granted the Government's unopposed Motion to Dismiss Counts Three and Eight of the second superseding indictment, leaving eight counts remaining.

92.     During the trial, KU's Assistant Vice Chancellor for Research, Alicia Reed, falsely testified that Professor Tao submitted the September 2018 COI form.

**ANSWER**:  **Denied.**

93.     On or about April 7, 2022, a jury found Professor Tao guilty on three counts of wire fraud and one count of making a false statement, and found him not guilty on the remaining four counts.  Professor Tao immediately moved for acquittal on those counts notwithstanding the verdict.  The District Judge expressly invited post-verdict motions and observed that "there are some significant issues in this case."

**ANSWER**:  **Defendants admit that Tao was convicted by a jury of his peers on three criminal counts of wire fraud and one count of making a false statement.  Defendants further state that Tao's criminal conviction speaks for itself.  Defendants admit that Tao moved for acquittal on the criminal charges the jury convicted him of.  Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 93 and, therefore, deny the same.**

94.     On April 15, 2022, notwithstanding the significant issues with the verdict that were yet to be decided by the District Court, KU's Associate General Counsel Eric Aufdengarten informed Professor Tao that KU intended to proceed with termination because of the jury verdict.

**ANSWER**:  **Defendants admit that the University notified Tao that it intended to proceed with his termination following his criminal conviction by a jury of his peers on or about April 15, 2022.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 94.**

95.    In response, on April 19, 2022, Professor Tao's employment lawyer stated to Eric Aufdengarten that the criminal action had not yet concluded because a "conviction" under the law requires that "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." KU did not respond.

**ANSWER: Defendants admit that counsel for Tao objected to the University's intention to terminate Tao's employment on about April 19, 2022. Defendants deny any remaining allegations contained in Paragraph 95.**

96.    On September 20, 2022, the District Court acquitted Professor Tao on the three wire fraud counts on the ground that "the evidence was legally and factually insufficient to support Tao's wire fraud convictions." Therefore, only one count of false statement remained. The Court also concluded that "there is no evidence that Tao's conduct put KU or NSF at any risk of loss."

**ANSWER: Defendants admit that the District Court convicted Tao on one count of making a materially false statement and set aside the jury's verdict finding him guilty of three additional counts of wire fraud on about September 20, 2022. The District Court's ruling speaks for itself as a written document. To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 96.**

97.    Professor Tao's sentencing was scheduled for January 18, 2023. KU actively supported and assisted the federal government in seeking a 30-month prison sentence and a $100,000 fine for the one remaining count.

**ANSWER**: **Defendants admit that Tao's sentencing on his criminal conviction was scheduled for January 18, 2023, and that University personnel participated in those proceedings pursuant to subpoena. To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 97.**

98.     On January 6, 2023, while KU witnesses prepared to testify for the government at Professor Tao's sentencing, Chancellor Girod and Vice Chancellor Bichelmeyer terminated Professor Tao from his tenured position. KU refused to wait for sentencing or the appeal process and refused to conduct a pre-termination hearing as required by KU's own rules and policies.

**ANSWER**: **Defendants admit that the University's informed Tao of its decision to formally terminate his employment as a professor at the University on January 6, 2023, following Tao's criminal conviction, but prior to his sentencing hearing. To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 98.**

99.     At the January 18, 2023 sentencing hearing, KU made disparaging, baseless comments against Professor Tao. KU's Assistant Vice Chancellor for Research, Alicia Reed, testified that Professor Tao had caused significant financial damage to the university.

**ANSWER**: **Defendants admit that Alicia Reed testified at Tao's sentencing hearing on January 18, 2023. Defendants deny the remaining allegations in Paragraph 99.**

100.     The District Court criticized KU's assertion that Professor Tao had caused damage and neglected his responsibilities.

> I went into this trial frankly thinking I was going to hear evidence that there
> was a loss. . . . I thought frankly what I might hear at trial and I never heard

was that he wasn't entitled to his salary at KU because during the semester or whenever he was in China, he wasn't doing any work for KU so he was double-dipping so to speak and pulling a salary from KU that he didn't earn. But I didn't hear that. I heard the contrary. I heard that this is a man that is obsessed with his work. . . . I heard even when he was in China, Germany, or wherever he might be, he worked [his students] to death and he worked himself to death. And he earned his salary at KU. . . . What I heard . . . was that wherever Dr. Tao was, . . . he was on the phone, he was emailing his post-docs and his graduate students and he worked them to death, and it was as if he was there full time. . . . He did the work he was supposed to do.

**ANSWER: Defendants admit that Paragraph 100 accurately quotes an excerpt from the District Court's sentencing order following Tao's criminal conviction. The District Court's sentencing order speaks for itself as a written document. To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 100.**

101.     The District Court denied the Government's request for a 30-month prison sentence and $100,000 fine, concluding that "[t]here was no loss proved at trial. The things that the government argues now in terms of being a loss, there was no evidence of such, and they don't constitute loss.", and "[t]here's no loss from the fact that KU paid him a salary. There was no loss in federal research dollars. There was no evidence that the research wasn't conducted, that NSF and DOE for that matter did not receive what they paid for in terms of research and all that that entitled."

**ANSWER: Defendants admit that Paragraph 101 accurately quotes an excerpt from the District Court's sentencing order following Tao's criminal conviction. The District Court's sentencing order speaks for itself as a written document. To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 101.**

102.    On January 25, 2023, Professor Tao filed a notice of intent to appeal his conviction on the sole count of making a false statement in violation of 18 U.S.C. 1001.  In that appeal, Professor Tao argued that the evidence at trial was insufficient to sustain the conviction.

**ANSWER:  Defendants admit that Tao appealed his criminal conviction on about January 25, 2023.  Tao's appeal speaks for itself as a written document.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 102.**

103.    On July 11, 2024, the Court of Appeals for the Tenth Circuit agreed with Professor Tao and reversed his conviction, finding that the Government failed to carry its burden to prove that the alleged false statement was material, and remanded the case for the district court to enter a judgment of acquittal.  Specifically, the Appellate Court found that "the evidence supports neither [of the Government's] materiality theor[ies]," that some of the Government's assertions were made "without analysis," and that the Government made assertions that "border[] on misrepresentation."  The Appellate Court further admonished the Government that, "as should be obvious, the government may not manufacture materiality by charging someone with a federal crime."

**ANSWER:  Defendants admit that the Tenth Circuit reversed Tao's conviction on or about July 11, 2024, and that Paragraph 103 accurately quotes excerpts of the Tenth Circuit's opinion.  Defendants further state that the Tenth Circuit's opinion speaks for itself as a written document.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 103.**

104.    Although Professor Tao was ultimately acquitted of all charges brought against him, he spent a week in jail and 3.5 years confined to his home with an ankle monitor as a result of the criminal prosecution that was triggered by, and supported by, KU's irresponsible, reckless, and discriminatory actions.

**ANSWER:  Denied.**

105.    To this day, KU has expressed no contrition, regret, or self-reflection about its actions.  Nor has it ever apologized to Professor Tao.  Instead, the defendants continue to besmirch his reputation and repeat inflammatory accusations that have no factual basis.

**ANSWER:  Denied.**

106.    On July 26, 2024, Professor Tao wrote to Vice Chancellor Bichelmeyer to request the reinstatement of his tenured faculty position.

**ANSWER:  Admitted.**

107.    On August 20, 2024, KU—specifically, Chancellor Girod and Vice Chancellor Bichelmeyer—refused to reinstate him to a tenured faculty position, but offered to grant him unpaid administrative status so that he could request an appeal.

**ANSWER:  Defendants admit that the University offered to reinstate Tao on unpaid administrative status for the sole purpose of pursuing an appeal of his termination under the University's internal procedures on about August 20, 2024, and that the University declined to reinstate Tao's full employment as a tenured faculty member at the University.  To the**

**extent any further response is required, Defendants deny any remaining allegations in Paragraph 107.**

108.    On September 6, 2024, KU provisionally reinstated Professor Tao solely for the purpose of the FRB appeal and issued a revised Proposed Administrative Action, again recommending dismissal.

**ANSWER: Admitted.**

109.    Between December 2024 and February 2025, KU and Professor Tao engaged in settlement discussions but could not reach an agreement.  Attempts at a mediated or negotiated resolution were exhausted.

**ANSWER: Admitted.**

110.    Accordingly, on February 14, 2025, Professor Tao notified KU of his intent to appeal the Proposed Administrative Action to the FRB.

**ANSWER: Admitted.**

111.    On February 28, 2025, KU issued a Statement of Charges against Professor Tao.

**ANSWER: Admitted.**

112.    The FRB was missing a chair in February and March 2025, and therefore the appeal proceedings could not move forward.

**ANSWER:  Defendants admit that a tenured faculty chair for the FRB was not identified in February and March 2025.  Defendants deny the remaining allegations in Paragraph 112.**

113.    On March 31, 2025, KU informed Professor Tao that it had "created a temporary FRB" with a non-tenured faculty member as chair, and that both parties must consent to proceed before the temporary FRB committee.

**ANSWER:  Defendants admit that on March 31, 2025, the University informed Tao that a full FRB panel was provisionally formed and that Tao refused to consent to proceeding with his appeal to that FRB panel.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 113.**

114.    On April 11, 2025, Professor Tao informed KU that he does not consent to the temporary FRB committee, and noted that he was entitled under KU's policies to an FRB comprised of tenured faculty members, which is particularly important because his appeal relates to faculty tenure rights.

**ANSWER:  Defendants admit that on about April 11, 2025, Tao objected to the composition of the FRB panel presented to him to facilitate his appeal.  Defendants deny the remaining allegations in Paragraph 114.**

115.    KU responded that "[t]he FRB chair was officially appointed with the Chancellor's approval of the update to the FRB membership allowing all faculty to be members."

**ANSWER**:  Defendants admit that Paragraph 115 accurately quotes an excerpt of an April 14, 2025, email sent from the University's Governance Office to Tao concerning Tao's objection to the composition of the FRB panel offered to hear Tao's appeal.  Defendants further state that April 14, 2025, email speaks for itself as a written document.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 115.

116.    On April 16, 2025, Professor Tao requested that KU reconsider the composition of the FRB for his appeal and asserted that the change in the composition of the FRB to include non-tenured faculty was a violation of his due process rights.

**ANSWER**:  Defendants admit that Tao requested that his appeal be considered by an FRB panel constituted exclusively of tenured faculty members.  Defendants further state that Tao's request speaks for itself as a written document.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 116.

117.    The KU Faculty Senate Rules and Regulations adopts policy statements of the American Association of University Professors ("AAUP").  The AAUP's statement on Academic Freedom and Tenure provides that "[t]he precise terms and conditions of every appointment should be stated in writing and be in the possession of both institution and teacher before the appointment is consummated."

**ANSWER**:  Defendants state that the University's Faculty and Senate Rules and Regulations speak for themselves as written documents.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 117.

42

118.     As of the date of Professor Tao's appointment in August 2014, as well as the date

of his provisional reinstatement for the purpose of the FRB appeal (September 6, 2024), the FRB

was limited to tenured faculty members.   The composition of the FRB is therefore a term and

condition of Professor Tao's employment and KU may not unilaterally change those terms.   K.S.A.

75-4322; 75-4322(t).

**ANSWER**:  **Denied.**


119.     The Chancellor's change to the requirements for FRB membership, and the

appointment of a non-tenured faculty member to chair the FRB, is not only a breach of Professor

Tao's employment rights, but also compromises the independence of the committee.

**ANSWER**:  **Denied.**


120.     The employment and promotion prospects of untenured faculty are subject to KU's

discretion, creating a situation that falls squarely within the definition of "Conflict of Interest" set

forth in policy statements by the AAUP.

**ANSWER**:  **Denied.**


121.     Professor Tao formalized his objection to the FRB composition in a letter to KU

dated May 5, 2025.

**ANSWER**:  **Defendants admit that Tao submitted a written objection the composition**

**of the FRB panel offered to hear his appeal on about May 5, 2025.  Defendants further state**

that Tao's objection speaks for itself as a written document.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 121.

122.    On May 19, 2025, KU issued a written response insisting that the change to the FRB composition was "authorized and appropriate."

**ANSWER**:  **Defendants admit that on about May 19, 2025, the University provided, via counsel, a written response to Tao's objection to the composition of the FRB panel offered to hear his appeal.  Defendants further state that the University's written response speaks for itself as a written document.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 122.**

**The University of Kansas's Continued Discrimination Against Professor Tao**

123.    KU's intentional discrimination against Professor Tao is evidence from its actions and statements going back to the receipt of the anonymous complaint in April 2019 and continuing to this day.

**ANSWER**:  **Denied.**

124.    The reasons given for Professor Tao's termination—the purported failure to disclose ties to a foreign university on the 2018 COI form—were pretextual because faculty members who are not of Chinese descent and national origin, and who had significant interactions with foreign universities, were not targeted, disparaged, reported to law enforcement, or subjected to adverse employment action for failing to include those interactions on COIs.

**ANSWER**:  **Denied.**

125.    For example, upon information and belief, Comparator Professor 1 ("CP 1") is non-Chinese and has been a KU professor since 2007.  CP 1 was a guest professor at a German university in 2015 and 2018.

**ANSWER:  Defendants lack information sufficient to admit or deny the allegations in Paragraph 125 and, therefore, deny the same.**

126.    Similarly, upon information and belief, Comparator Professor 2 ("CP 2") is non-Chinese and has been a KU professor since 1984.  CP 2 has had several connections to foreign universities, including as a vising professor at a French university from 1995 through 2002, 2006 through 2007, and 2009 through 2010; a visiting scholar at a Chinese university from 2004 to present; and a Fulbright scholar at a Ukrainian university in 2005.

**ANSWER:  Defendants lack information sufficient to admit or deny the allegations in Paragraph 126 and, therefore, deny the same.**

127.    Comparator Professor 3 ("CP 3") is non-Chinese and, during his tenure as a professor at KU, was also a visiting professor at a Japanese university in 2007.

**ANSWER:  Defendants lack information sufficient to admit or deny the allegations in Paragraph 127 and, therefore, deny the same.**

128.    Comparator Professor 4 ("CP 4") is non-Chinese and has been a KU professor since 2009.  CP 4 was a visiting professor at a Japanese university from 2019 through 2020 under a fellowship program.

**ANSWER:  Defendants lack information sufficient to admit or deny the allegations in Paragraph 128 and, therefore, deny the same.**

129.    Comparator Professor 5 ("CP 5") is non-Chinese and was employed by KU between 2005 and 2019.  CP 5 had several connections to universities outside of the U.S., including as a visiting professor at a British university and a Chinese university between 2016 and 2019 and coauthor of at least one research article in which he listed his affiliation as both KU and a foreign university.

**ANSWER:  Defendants lack information sufficient to admit or deny the allegations in Paragraph 129 and, therefore, deny the same.**

130.    Comparator Professor 6 ("CP 6") is non-Chinese and was employed by KU from 2008 through 2023.  CP 6 had several connections to universities outside of the U.S., including an appointment as a chair professor at a Chinese university between October 2013 and October 2016 through a China talent program, and an appointment as a professor at a different Chinese university between May 2015 and May 2018.  CP 6 co-authored at least one publication in 2016 in which he listed his affiliation as both KU and a Chinese university.

**ANSWER:  Defendants lack information sufficient to admit or deny the allegations in Paragraph 130 and, therefore, deny the same.**

131.    Comparator Professor 7 ("CP 7") is non-Chinese and was employed by KU from 1998 through 2023.  CP 7 had several connections to universities outside of the U.S., including an appointment as a professor with a French university in 2009, appointments as a professor at two

different Chinese universities in 2012 and 2013, and as co-author of a number of publications of research funded by the Chinese government and a Chinese university in 2017-2020.  CP 7 also received certificates and awards in 2015 and 2013 from a Chinese university and a Chinese municipal government.

**ANSWER:  Defendants lack information sufficient to admit or deny the allegations in Paragraph 131 and, therefore, deny the same.**


132.    Comparator Professor 8 ("CP 8") is non-Chinese and has been a KU professor since 2006.  CP 8 has had several connections to Chinese universities, including as a visiting research speaker at an institute of the Chinese Academy of Science at Chongqing in 2014.  CP 8 also co-authored a few publications of research solely funded by the Chinese government.

**ANSWER:  Defendants lack information sufficient to admit or deny the allegations in Paragraph 132 and, therefore, deny the same.**


133.    Comparator Professor 9 ("CP 9") is non-Chinese and has been a KU professor since 1996. CP 9 has had connections to a Chinese university since at least 2012, including as a visiting professor.

**ANSWER:  Defendants lack information sufficient to admit or deny the allegations in Paragraph 133 and, therefore, deny the same.**


134.    KU's termination of Professor Tao, its continual refusal to reinstate him, and its continued efforts to disparage him, vilify him, and destroy his career, are all acts of unlawful discrimination under the laws of the United States.

**ANSWER**:  **Denied.**

## CLAIMS

### COUNT I
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.***
**Discrimination on the Basis of Race, Color, and National Origin**
*Against the University of Kansas*

The University states that, subject to the Court's Order granting in part Defendants' respective motions to dismiss (Doc. 50), Count I of Tao's Second Amended Complaint has been dismissed. As such, no response to Paragraphs 135 through 146 of Tao's Second Amended Complaint is required. To the extent any response to Paragraphs 135 through 146 is required, the University denies such allegations.

### COUNT II
**Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000(e) *et seq.***
**Wrongful Termination on the Basis of Race, Color, and National Origin**
*Against the University of Kansas*

147.    Professor Tao repeats and realleges paragraphs 1-146 as if fully set forth herein.

**ANSWER:   The University states that Paragraph 147 does not contain factual allegations to which any response is required.  To the extent any response is required, the University hereby incorporates its responses and denials to each of the foregoing paragraphs as if set forth fully herein.**

148.    Professor Tao was highly qualified for his position at KU as a tenured professor chemistry and chemical engineering.

**ANSWER:  Paragraph 148 contains subjective and argumentative language by use of the word "highly."   Nevertheless, the University admits that Tao was qualified for his position.**

149.    KU's termination of Professor Tao was wrongful and motivated by non-legitimate, discriminatory reasons, which is evident from its actions and statements relating to his termination, including (1) ongoing collaboration with the federal government as part of the "China Initiative," (2) exaggerated and false testimony provided by KU at Professor Tao's sentencing, and (3) treatment of Professor Tao's communications with Chinese people to suggest nefarious activity.

**ANSWER:  Denied.**

150.    Moreover, the termination of Professor Tao for an alleged failure to disclose ties with a foreign university on a COI form is far more severe than KU's treatment of other faculty members who do not disclose significant ties with foreign universities.

**ANSWER:  Denied.**

151.    KU's assertion that it terminated Professor Tao because of the felony conviction is clearly pretextual because after the conviction was overturned, KU refused to reinstate Professor Tao.

**ANSWER:  Denied.**

152.    Professor Tao is entitled to reinstatement, back pay, and compensatory damages for KU's wrongful termination of him in violation of Title VII.  Pursuant to the third-party litigation exception, Professor Tao is also entitled to attorneys' fees and costs related to the criminal proceeding that was caused by KU's tortious conduct.

**ANSWER:  Denied.**

### COUNT III
### 42 U.S.C. § 1983
### Fourteenth Amendment
### Deprivation of Procedural Due Process
*Against Douglas Girod and Barbara Bichelmeyer in their <u>Official Capacities</u>*

153.    Professor Tao repeats and realleges paragraphs 1-152 as if fully set forth herein.

**<u>ANSWER</u>:  Defendants state that Paragraph 153 does not contain factual allegations to which any response is required.  To the extent any response is required, Defendants hereby incorporate their responses and denials to each of the foregoing paragraphs as if set forth fully herein.**

154.    As a tenured professor at a public university, Professor Tao possesses a constitutionally protected property interest in his tenure.

**<u>ANSWER</u>:  Paragraph 154 contains legal conclusions to which no response is required.  To the extent any response is required, Defendants deny that Tao had any constitutionally protected property interest in his employment at the University at the time of his termination.  Defendants deny any remaining allegations contained in Paragraph 154.**

155.    Chancellor Girod and Vice Chancellor Bichelmeyer have the authority to hire, terminate, and reinstate professors at KU.

**ANSWER:   Paragraph 155 contains legal conclusions to which no response is required.  To the extent any response is required, Defendants admit that Chancellor Girod is the chief executive officer who generally oversees the University's operations, consistent with Kansas law, policies enacted by the University's Board of Regents, and the University's operational policies and procedures.  Defendants deny that Chancellor Girod or Vice Chancellor Bichelmeyer have unilateral and unfettered authority over all personnel decisions involving faculty at the University.  Defendants deny any remaining allegations in Paragraph 155.**

156.    Chancellor Girod and Vice Chancellor Bichelmeyer, acting under color of state law, terminated Professor Tao without holding a hearing or affording him an appeal of the Proposed Administrative Action.

**ANSWER: Denied.**

157.    Chancellor Girod and Vice Chancellor Bichelmeyer deprived Professor Tao of his right to procedural due process in violation of the Fourteenth Amendment and KU's own policies which require that Professor Tao have an opportunity to be heard, a fair hearing, and an appeal before the FRB comprised of tenured faculty members.

**ANSWER: Denied.**

158.    Chancellor Girod and Vice Chancellor Bichelmeyer have continuously refused to reinstate Professor Tao, even after he was acquitted of all charges.  As of May 30, 2025, it has been 983 days since Professor Tao was acquitted.

**ANSWER:  Defendants admit that Tao has not been fully reinstated to a tenured faculty position, as Tao was provisionally reinstatement per an agreement between Tao and the University for the sole purpose of facilitating an appeal to the FRB.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 158.**

159.    Chancellor Girod and Vice Chancellor Bichelmeyer's ongoing refusal to reinstate Professor Tao constitutes a continuing violation of federal law.

**ANSWER:  Denied.**

160.    Chancellor Girod's recent direction to change the composition of the FRB to include non-tenured faculty, and his refusal to abide by the terms of Professor Tao's employment which guarantee an appearance before an FRB composed of tenured faculty, is a further deprivation of Professor Tao's procedural due process.

**ANSWER:  Denied.**

161.    Professor Tao is entitled to reinstatement of his tenured position as a result of Chancellor Girod and Vice Chancellor Bichelmeyer's violation of 42 U.S.C. § 1983 in their official capacities.

**ANSWER:  Denied.**

### COUNT IV
### 42 U.S.C. § 1983
### Fourteenth Amendment
### Deprivation of Procedural Due Process
*Against Douglas Girod and Barbara Bichelmeyer in their <u>Individual Capacities</u>*

Defendants state that, subject to the Court's Order granting in part Defendants' respective motions to dismiss (Doc. 50), Count IV of Tao's Second Amended Complaint has been dismissed. As such, no response to Paragraphs 162 through 168 of Tao's Second Amended Complaint is required. To the extent any response to Paragraphs 162 through 168 is required, Defendants deny such allegations.

### COUNT V
### 42 U.S.C. § 1983
### Fourteenth Amendment
### Discrimination on the Basis of Race in Violation of the Equal Protection Clause
*Against Douglas Girod in his <u>Official Capacity</u>*

169.    Professor Tao repeats and realleges paragraphs 1-168 as if fully set forth herein.

**<u>ANSWER</u>: Defendants state that Paragraph 169 does not contain factual allegations to which any response is required. To the extent any response is required, Defendants hereby incorporate their responses and denials to each of the foregoing paragraphs as if set forth fully herein.**

170.    At all relevant times, Chancellor Girod has been the executive leader of KU.

**<u>ANSWER</u>: Paragraph 170 contains legal conclusions to which no response is required, particularly to the extent Paragraph 170 utilized the phrase "all relevant times[.]" To the extent any response is required, Defendants state that Chancellor Girod has been in his position at the University since 2017 and remains in that role as of the date of this Answer.**

53

171.    At all relevant times, acting under color of state law, Chancellor Girod directed, authorized, approved, or permitted the aforementioned actions of Carl Taylor, Kimberly Grunewald, Alicia Reed, Barbara Bichelmeyer, Chris Brown, and other KU employees, which actions were undertaken and approved to perpetuate discrimination against Professor Tao on the basis of race.

**ANSWER:  Paragraph 171 contains legal conclusions to which no response is required.  To the extent any response is required, Defendants deny the allegations in Paragraph 171.**

172.    Professors who are not of Chinese descent and national origin, who were the subjects of complaints or who had interactions with foreign universities that were not disclosed on COI forms, were not subject to the hostility and targeted destruction that was perpetuated by KU's administration under Chancellor Girod's leadership on Professor Tao.

**ANSWER:  Denied.**

173.    Professor Tao is entitled to reinstatement of his tenured faculty position as a result of the racial discrimination perpetrated by Chancellor Girod under color of state law.

**ANSWER:  Denied.**

**COUNT VI**
**42 U.S.C. § 1981, seeking relief under 42 U.S.C. § 1983**
**Fourteenth Amendment**
**Discrimination on the Basis of Race in Violation of the Equal Protection Clause**
*Against Douglas Girod in his* _Official Capacity_

174.    Professor Tao repeats and realleges paragraphs 1-173 as if fully set forth herein.

**ANSWER:  Defendants state that Paragraph 174 does not contain factual allegations to which any response is required.  To the extent any response is required, Defendants hereby incorporate their responses and denials to each of the foregoing paragraphs as if set forth fully herein.**

175.    Professor Tao is a member of a protected class within the meaning of the Equal Protection Clause.

**ANSWER:  Paragraph 175 contains legal conclusions to which no response is required.  To the extent any response is required, Defendants admit that Tao identifies as being of Chinese descent.  To the extent any further response is required, Defendants deny the remaining allegations in Paragraph 175.**

176.    Professor Tao's employment as a tenured faculty member of KU is governed by contract.

**ANSWER:  Paragraph 176 contains legal conclusions to which no response is required.  To the extent any response is required, Defendants state that Tao's employment at the University was governed by written agreements, institutional policies and procedures, as amended from time to time, policies of the Kansas Board of Regents, as amended from time to time, and applicable Kansas statutes, as amended from time to time.  To the extent any further response is required, Defendants deny any remaining allegations in Paragraph 176.**

177.    The performance and enjoyment of the benefits, privileges, terms, and conditions of a contract are protected activities as defined in 42 U.S.C. § 1981.

**ANSWER:   Paragraph 177 contains legal conclusions to which no response is required.   To the extent any response is required, Defendants deny the allegations in Paragraph 177.**

178.    Professor Tao's employment contract was terminated by Chancellor Girod as a result of unlawful racial discrimination.

**ANSWER:  Denied.**

179.    Accordingly, Chancellor Girod deprived Professor Tao of his right to enforce his employment contract to the full and equal benefit of all laws as enjoyed by other citizens by terminating him in violation of 42 U.S.C. § 1981.

**ANSWER:  Denied.**

180.    Professor Tao is entitled to reinstatement of his tenured faculty position as a result of Chancellor Girod's interference with his right to enforce his employment contract to the full and equal benefit of all laws as enjoyed by other citizens.

**ANSWER:  Denied.**

## PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing, Professor Tao respectfully requests the following relief:

(a)     an order requiring that Vice Chancellor Bichelmeyer and Chancellor Girod reinstate Professor Tao to his tenured position;

(b)     an award of damages for lost wages or backpay;

(c)     an award of damages for reputational injury, emotional distress, pain and suffering, and punitive damages;

(d)     an award of actual attorneys' fees and costs expended to defend against criminal charges brought as a result of KU's tortious acts;

(e)     an award of reasonable attorneys' fees and costs expended in the instant litigation; and

(f)     such other relief as the Court deems appropriate.

**ANSWER:  Defendants deny that Tao's claims have any merit or that he is entitled to any relief or remedy whatsoever.**

## DEFENDANTS' GENERAL DENIAL

Defendants deny any and all allegations and assertions contained in Tao's Second Amended Complaint unless explicitly admitted herein.  Defendants deny that Tao is entitled to any relief or remedy whatsoever. Defendants have included subheadings, titles, and footnotes from Tao's Second Amended Complaint for convenience of the reader, but Defendants deny any and all allegations contained in the subheadings and titles.

## DEFENDANTS' AFFIRMATIVE AND OTHER DEFENSES

1.     Tao's Second Amended Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

2.     All claims Tao has asserted or may attempt to assert, other than his Title VII claims, are barred by the Eleventh Amendment and/or the University's inherent sovereign immunity.  As

an arm and subdivision of the State of Kansas, the University does not consent to a suit for money damages or injunctive relief in federal court.  Congress has not explicitly or validly waived the University's immunity under the Eleventh Amendment or its inherent sovereign immunity.

3.      Tao's claims against Dr. Girod in his official capacity, including Counts V and VI, are barred because, under the *Ex parte Young* exception, Tao may only seek prospective injunctive relief to remedy continuing and future violations of federal law, and the Court has already determined that Tao's rights are not currently being violated and, therefore, any injunctive relief sought by Tao could only remedy a past (alleged) violation.  Any claim Tao has asserted or may attempt to assert seeking any relief other than prospective injunctive relief (which he is not entitled to) is barred by Eleventh Amendment immunity.

4.      Tao's claims are barred, in whole or in part, because Defendants are immune to the extent Tao's claims are based on Defendants furnishing information pertaining to suspected or alleged criminal activity involving Tao to law enforcement agencies and/or testifying in legal proceedings.

5.      Tao's claims for damages are barred in whole or in part by the doctrines of estoppel, laches, waiver, and/or unclean hands.

6.      Tao's claims are barred, in whole or in part, by the applicable regulatory filing periods and/or the applicable statute of limitations.

7.      Tao's claims are barred, in whole or in part, by the doctrine of res judicata/claim preclusion.

8.      Tao's claims are barred, in whole or in part, based on his own actions and course of conduct.

9.      Defendants had legitimate non-discriminatory reasons for their decisions and made their decisions in a good faith exercise of reasonable business judgment.

10.      Tao's claims are untimely and barred due to failure to administratively exhaust remedies to the extent that Tao relies on any alleged acts of discrimination or adverse actions that occurred more than 300 days prior to the date on which he filed his Charges of Discrimination.

11.      To the extent Tao has incurred any damages, which Defendants expressly deny, he has failed to mitigate those damages by, among other things, failing to seek or accept adequate full time employment commensurate with his education and qualifications.

12.      Tao's claims are barred because Defendants' conduct was consistent with all applicable laws and regulations.

13.      At all relevant times, Defendants acted in good faith and had reasonable grounds to believe that their actions did not violate any federal or state statute, regulation, or common law.

14.      Tao's claims are barred because all decisions Defendants made with respect to Tao's employment were made for legitimate, non-discriminatory, non-retaliatory, non-pretextual reasons.

15.      To the extent Tao's claims are based in whole or in part upon a "mixed motive" claim and the fact finder determines, based upon legally sufficient evidence, that Tao's alleged membership in a protected class was a factor in any employment decision at issue (which Defendants absolutely deny), Defendants are entitled to a judgment, in whole or in part, because the same employment decisions would have been made regardless of whether Tao's alleged membership in a protected class was considered.

16.    Tao's claims are barred because Tao cannot demonstrate a causal connection between the events alleged in his Second Amended Complaint and any damages he allegedly suffered.

17.    If Tao suffered damages, which Defendants specifically deny, such injuries were caused by others and not caused by Defendants.

18.    To the extent Tao has obtained or does obtain alternative employment or other sources of income, Defendants are entitled to a set-off or credit against Tao' alleged damages.

19.    To the extent Tao asserts or may attempt to assert claims against individual defendants and/or employees of the University in their personal capacities, individual defendants and/or employees of the University are entitled to qualified immunity.

20.    Tao's claims must fail where the University had a reasonable process in place for Tao to report and/or complain of the discriminatory acts alleged in his Second Amended Complaint, but where Tao unreasonably failed to take advantage of this process or otherwise avoid harm.

21.    To the extent Tao asserts or may assert claims for liquidated damages, attorneys' fees, costs, expenses, and/or any other equitable relief, such claims for relief are not triable to a jury.

22.    To the extent Tao seeks damages for any claims under Title VII, the statutory damage caps apply, pursuant to 42 U.S.C. § 1981a(b).

23.    Tao's claim for punitive damages is unconstitutional because the asserted standard for entitlement to punitive damages is vague and arbitrary and the procedure for the assessment of punitive damages violates Defendants' right to due process of law, the equal protection of the law, to the right to be free from unlawful taking of property, the right to be free from excessive fines

and all other substantive and procedural protections of the Constitution applicable to punitive damages. And punitive damages are not available against the state of Kansas and/or its officials in their official capacities.

24.     The University has in place (and had at all times relevant to this action) clear and well-disseminated policies against discrimination, harassment and retaliation, and a reasonable and available procedure for handling complaints thereof, which provides for prompt and effective responsive action. To the extent Tao unreasonably failed to take advantage of the preventive or corrective opportunities provided by the University, or to avoid harm otherwise, Tao's claims against Defendants are barred.

25.     If Tao sustained damages, which is specifically denied, such injuries were caused by him and/or third parties over whom Defendants had no control and were not caused by Defendants.

26.     Tao cannot recover any alleged damages from Defendants that were caused by or connected to his criminal prosecution and original criminal conviction because Defendants do not possess prosecutorial authority to pursue criminal charges against Tao.

27.     Tao's claims, as set forth in his Second Amended Complaint, are, in whole or in part, frivolous, unreasonable, and vexatious, thereby entitling Defendants to costs and attorney's fees incurred in the defense of this action.

28.     Defendants reserve the right to amend this Answer to assert additional affirmative and other defenses and/or counterclaims and sanctions motions that may be uncovered or made known during the pendency of this case.

WHEREFORE, having fully answers Plaintiff Franklin (Feng) Tao's Second Amended Complaint, Defendants respectfully request that this Court enter judgment in their favor and

against Tao, and/or dismiss Tao's Second Amended Complaint with prejudice, for the their costs and attorney's fees incurred herein, and for such other and further relief as the Court deems just, proper, and equitable.

Date:   February 12, 2026                    Respectfully submitted,

                                             /s/ Allen F. James
                                             DEREK T. TEETER          KS BAR NO. 23242
                                             BRIAN J. ZICKEFOOSE      KS BAR NO. 21948
                                             ALLEN F. JAMES           D. KAN. NO. 78843
                                             NOEL Z. FISHER           KS BAR NO. 29422
                                             HUSCH BLACKWELL LLP
                                             4801 Main, Suite 1000
                                             Kansas City, Missouri 64112
                                             (816) 983-8000
                                             (816) 983-8080 (FAX)
                                             derek.teeter@huschblackwell.com
                                             brian.zickefoose@huschblackwell.com
                                             aj.james@huschblackwell.com
                                             noel.fisher@huschblackwell.com
                                             ***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2026, I filed the foregoing document via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

/s/ Allen F. James
**_Attorney for Defendants_**